2006 VT 44

**Barry KADE, Esq. v. Charles SMITH, Secretary, Agency of Human Services**

[904 A.2d 1080]

No. 04-344

¶ 1. June 5, 2006. Plaintiff Barry Kade appeals from a superior court judgment denying his request under the Public

Records Act to compel disclosure of four performance evaluations pertaining to the Superintendent of the Northern State Correctional Facility in the City of Newport. Plaintiff contends the court erred in: (1) refusing to examine the requested documents in camera; (2) ruling that the records contain personal information exempt from disclosure; (3) failing to balance the competing interests in privacy and disclosure; and (4) declining to redact those portions of the records determined to be confidential and releasing the balance. For the reasons set forth below, we reverse the judgment and remand for further proceedings.

¶ 2. In June 2003, plaintiff submitted a Public Records Act (PRA) request to the Department of Corrections (DOC) to provide the performance evaluation reports relating to Kathleen Lanman, Superintendent of the Northern State Correctional Facility, for the years 1999 through 2003.[1] The DOC, and later the Secretary of the Agency of Human Services (Agency), denied the request, claiming that the evaluations were exempt from disclosure under the "personal documents" exception of the PRA, 1 V.S.A. § 317(c)(7).[2] Plaintiff then filed a

complaint in superior court, seeking to compel production of the documents in question. *Id.* § 319(a). The State moved to dismiss and later moved for summary judgment, but the court denied both motions for failure to make a specific, factual showing that the records contained personal information exempt from disclosure under the statute and our decisions in *Trombley v. Bellows Falls Union High School District No. 27*, 160 Vt. 101, 624 A.2d 857 (1993), and *Norman v. Vermont Office of Court Administrator*, 2004 VT 13, 176 Vt. 593, 844 A.2d 769 (mem.).

¶ 3. The State then filed a supplemental legal memorandum, together with a so-called *Vaughn* index, summarizing the four evaluation reports at issue.[3] Each report was prepared using a standard evaluation form (a blank form was also provided to the court). The index described the first section of each report as containing basic information identifying the subject of the evaluation (in this case Superintendent Lanman); the name of

---

[1] Plaintiff also requested all other documents generated or submitted as part of the evaluation process. The State ultimately responded, and the court found, that there were no documents within this category, and plaintiff has not challenged this finding.

[2] This provision exempts from disclosure

> personal documents relating to an individual, including information in any files maintained to hire, evaluate, promote or discipline any employee of a public agency, information in any files relating to personal finances, medical

---

> or psychological facts concerning any individual or corporation; provided, however, that all information in personnel files of an individual employee of any public agency shall be made available to that individual employee or his designated representative.

1 V.S.A. § 317(c)(7).

[3] The term *"Vaughn* index" derives from *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), which involved a request for documents under the federal Freedom of Information Act. The four documents identified were performance evaluation reports for the years 1999, 2000, 2001, and 2004. There were no reports on file for 2002 or 2003.

the employee's supervisor and the person conducting the evaluation (the index specifically identified the evaluators by name and title); and boxes for the evaluator to check rating the employee's overall performance from outstanding to unsatisfactory. The next section of each evaluation described Lanman's major job duties and performance expectations. These varied somewhat, but generally included: management of the facility in accord with its design, staffing allocation, and sexual harassment policy; management of labor relations; communication with staff; monitoring drug activity at the facility; balancing offender treatment programs and work programs; and maintaining working relationships with other superintendents and DOC directors. The third section contained a narrative setting forth the supervisor's "comments" concerning the subject's performance of the major job duties described. The final section contained space for additional "comments" by the evaluator, the appointing authority, and the employee.

¶ 4. In addition to the foregoing, the State submitted affidavits from the Agency's personnel chief, Sharon Wilson, and the Commissioner of the Department of Personnel, Cynthia LaWare. Wilson described the performance evaluation reports as "key documents" in the State's evaluation and promotion of its employees, noted that they were the Agency's principal "vehicle for providing employees with candid and honest assessments," and opined that their public disclosure "would create a disincentive for raters to provide candid and honest evaluations." Wilson also stated her belief that disclosure "would cause embarrassment to employees even if their evaluations are very good" by its potential effect on the "morale" of co-workers receiving lower ratings. LaWare endorsed the view that public disclosure of performance evaluations would provide a "strong disincentive to frankness" and "cause friction and

undermine morale" among co-workers. She also suggested that, in Lanman's case, public disclosure might prove particularly harmful if, as a result, DOC officials became reluctant to identify performance deficiencies in the area of prison security for fear of its misuse by inmates.

¶ 5. Based on the foregoing, the trial court concluded that the evaluations contained material sufficiently personal in nature to fall within the personal-documents exception. The court then turned to a consideration of the asserted public interest in disclosure. In this regard, the court noted that plaintiff relied principally on a recent report by two independent investigators appointed by the Agency to examine the recent deaths of seven Vermont inmates. The court found that the independent report "strongly suggests some instances of negligence or other impropriety on Ms. Lanman's part which may have contributed to causing devastating consequences," and noted that the report had prompted an internal DOC investigation which had yet to be completed. Plaintiff argued that information in Lanman's evaluations would be useful in supplementing the investigative report, not so much in terms of evaluating the superintendent's performance, but in terms of assessing the depth and quality of her supervision by her superiors within the DOC.

¶ 6. While not denigrating the importance of the public interest in disclosure, the trial court found that the evaluations — which by nature deal with general performance rather than specific incidents — would not significantly advance that interest. They were, in the court's view, "highly unlikely to be a significant source of smoking gun evidence of [Lanman's] own impropriety or lack of supervision." Therefore, balanced against the specific infringement on individual privacy and the more general impact on

"candor when performance evaluations are splayed in public," the court concluded that the public interest did not weigh in favor of disclosure. Additionally, the court explained that it had specifically considered and rejected the possibility of in camera review as "unnecessary" and had concluded that redaction would drain the records of so much substance as to "render their release meaningless." Accordingly, the court denied the request. This appeal followed.[4]

I.

¶ 7. As the trial court correctly observed, the pertinent principles governing plaintiff's request are set forth in *Trombley*, the seminal case construing and applying the personal-documents exception, and our more recent decision in *Norman*. *Trombley* involved a PRA request by residents of the Town of Rockingham for all documents relating to

[4] In its motion for summary judgment, the Agency also cited 1 V.S.A. § 317(c)(25), which exempts from disclosure "passwords, access codes, user identifications, security procedures and similar information the disclosure of which would threaten the safety of persons or the security of public property." The trial court found that the State's factual showing was insufficient to demonstrate which, if any, material in the evaluations might pose a security risk and therefore declined to withhold the records on this basis. The parties have not briefed or argued this point, and we therefore consider the issue waived. The trial court also reserved ruling on plaintiff's request for all documents generated by the performance evaluations, but later found — based on the Agency's supplemental affidavits — that the files contained no such documents. As noted, plaintiff has not challenged this finding. .

the school board's consideration and rejection of several teachers' grievances contesting the board's condemnation of the teachers' alleged misuse of the school letterhead. The trial court ruled that the documents were exempt from disclosure under the personal-documents exception. In reviewing the ruling, we stressed that the policy underlying the PRA clearly favors the right of access, and that exceptions to this policy are to be "construed strictly against the custodians of the records and any doubts should be resolved in favor of disclosure." 160 Vt. at 106-07, 624 A.2d at 861 (quotations omitted). Furthermore, the burden is on the agency to "make the specific factual record necessary to support the exception claim." *Id.* at 107, 624 A.2d at 861 (quotations omitted).

¶ 8. Applying these broad principles, we held that, regardless of label, documents must be evaluated "based on their content rather than where they are filed" and must be shown to be personal in nature to fall within the exception. *Id.* at 108, 624 A.2d at 862. Recognizing that the term "personal documents" is vague and potentially limitless, *id.* at 109, 624 A.2d at 863, we held — consistent with the PRA's underlying policy — that it must be narrowly construed "to apply only when the privacy of the individual is involved." *Id.* at 110, 624 A.2d at 863. We explained that the exception applies only to those documents that "reveal 'intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends.'" *Id.* (quoting *Young v. Rice*, 826 S.W.2d 252, 255 (Ark. 1992)). Finally, citing the PRA's express policy of balancing the "right to privacy" against the need for "specific information ... to review the action of a governmental officer," 1 V.S.A. § 315, we held that it is incumbent upon courts applying the exception to "examine the public interest in disclo-

sure." *Id.* at 109-10, 624 A.2d at 863. Because the trial court had ruled that any information contained in the employees' disciplinary files was categorically exempt from disclosure, we remanded with directions to examine the materials in camera and weigh the competing interests. *Id.* at 110, 624 A.2d at 863.

¶ 9. In *Norman*, we considered the personal-documents exception as applied to material within a former state employee's personnel file concerning disciplinary action, an employment grievance, and a criminal records check. Relying on *Trombley* and the cases cited therein, we explained that the issue of "[w]hether public records relating to disciplinary action, performance evaluations, or employee grievances contain 'personal' information within this exception is a fact-specific determination, although we note that many courts have held that such records may contain highly personal, embarrassing information exempt from disclosure." 2004 VT 13, ¶ 9. We cited, in this regard, several cases from other states holding that performance evaluations — even if favorable to the individual — may contain highly sensitive or invasive information exempt from disclosure under a statutory exemption for private information. *Id.* Because the trial court in *Norman* had failed to address the issue, we remanded with directions to perform the requisite analysis. *Id.* ¶ 10. We noted that the court's options on remand included "redaction as an alternative to nondisclosure," *id.*, as well as the filing of a separate decision "under seal setting forth its specific factual findings." *Id.* ¶ 10 n.2.[5]

---

[5] In asserting that the PRA precludes a balancing of the interests once it is determined that a record falls within the personal-documents exception, the dissent implicitly invites the Court to dis-

## II.

¶ 10. With this background in mind, we turn to plaintiff's claims on appeal. As noted, the trial court found that the summary set forth in the State's *Vaughn* index "sufficiently demonstrates that the information in Ms. Lanman's evaluations is largely of [a] personal nature reasonably within (c)(7)." Plaintiff claims that without examining the materials in camera the trial court could not have made such a fact-specific determination. Although we have not held that in camera review is required in *every* case to determine whether records fall within the personal-documents exception, we agree that such review is often necessary to properly evaluate the nature and extent of the alleged invasion of privacy, which in turn depends on an understanding of

---

own its decisions in *Trombley* and *Norman* that hold to the contrary. We are not persuaded of the necessity or wisdom of such a course. The dissent argues that the explicit balancing requirement within the exception for records "concerning formulation of policy," 1 V.S.A. § 317(c)(12) (exempting such records from disclosure "where such would constitute a clearly unwarranted invasion of personal privacy"), suggests a legislative intent to preclude a balancing test where it is not expressly set forth in other exceptions. We are not persuaded, however, that the inclusion of a balancing test within one exception necessarily negates the otherwise express, overarching legislative principle that the "right to privacy ... ought to be protected unless specific information is needed to review the action of a governmental officer." *Id.* § 315. Furthermore, categorical exemptions of the kind advocated by the dissent are not, in our view, consistent with the strong statutory presumption in favor of disclosure.

the records' contents. That said, we are satisfied that under the unique circumstances presented here the trial court did not abuse its discretion in finding that the exception applied based on the index and supporting affidavits.

¶ 11. As noted, the index revealed that the evaluations contain comments by Superintendent Lanman's supervisor, and possibly others within the DOC, critiquing Lanman's performance as a supervisor in a wide range of areas affecting prison inmates, including monitoring of drug use, sexual harassment, relations with prison personnel, and offender treatment and work programs. The evaluations also address Lanman's working relationship with other prison employees, her fellow superintendents, and her superiors within the DOC. In the unique context of a prison facility, where an official's effectiveness and standing are critically dependent on the respect that he or she commands, the disclosure of such sensitive information cannot help but expose that official to potentially embarrassing comment among the prison population, and could even threaten the official's continued ability to perform the duties of office. This is precisely the sort of information that we have recognized as falling within the personal-documents exception. Hence, we cannot conclude that the court erred in forgoing an in camera review to determine that the exception applied to at least a portion of the documents in question.[6]

¶ 12. We reach a different conclusion, however, with respect to the trial court's public-interest analysis. The trial court ruled that disclosure of the performance evaluations would not materially advance the public interest asserted by plaintiff and that disclosure was therefore unwarranted. The court relied in this regard on a recent United States Supreme Court decision, *National Archives & Records Administration v. Favish*, 541 U.S. 157 (2004). There, the Court explained that in balancing an individual's privacy interest against the public interest in disclosure of records requested under the federal Freedom of Information Act, the claimant must show first "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that interest. Otherwise, the invasion of privacy is unwarranted." *Id.* at 172. Applying this two-part analysis, the trial court here implicitly recognized the significance of the public interest in uncovering official misconduct or negligence within the prison system but concluded that the performance evaluations were "highly

---

[6] In response to plaintiff's assertion that the court mischaracterized the performance evaluations as personal, the State suggests that they were, in fact, *categorically* exempt from disclosure under the personal-documents exception, which refers to "files maintained to hire, evaluate, promote or discipline," 1 V.S.A. § 317(c)(7), and that no consideration as

to whether they contain "personal" information as defined in *Trombley* and *Norman* was therefore necessary. Although *Trombley* concerned employee grievance records, our holding was clear that the exception turns on the specific content of the documents requested and not on their label or location in employment or disciplinary files. 160 Vt. at 108-09, 624 A.2d at 862. In *Norman*, we applied this holding to a variety of documents contained in a former state employee's personnel file, including records relating to disciplinary actions. 2004 VT 13, ¶ 8. Accordingly, we discern no merit to the State's argument.

unlikely" to reveal evidence of Lanman's own negligence or lack of supervision.

¶ 13. We are not persuaded that the court could properly make such a determination without examining the records in camera. The evidence here had advanced the charge of governmental impropriety well beyond mere speculation. An independent investigation had identified instances in which the prison system placed inmates at risk through violations of regulations, lax supervision, and inadequate communication and coordination between the central office and superintendents, between superintendents, and between prison officials and mental health workers. Indeed, the court here expressly found that the report would support "a belief by a reasonable person in governmental negligence or impropriety, and specifically that of Ms. Lanman," and further found that "[p]resumably, some impropriety of Ms. Lanman's may have been caused in turn by insufficient supervision of her." While it is true, as the trial court noted, that performance evaluations are not investigative in nature and focus on general performance rather than specific instances of misconduct, it is nevertheless reasonable to believe that they might shed light on the quality and extent of the DOC's supervision of Lanman, on its expectations of superintendents generally, and on the overall level of accountability within the DOC. Accordingly, we conclude that the trial court erred in failing to examine the records in camera to determine the nexus, if any, between the public interest asserted and the records requested.

¶ 14. Therefore, we hold that the matter must be remanded to the trial court. On remand, the court is directed to examine the performance evaluations in camera and balance the interests in privacy and disclosure. In so doing, the court must consider not only the relevance, if any, of the records to the public interest for which they are sought, but

any other factors that may affect the balance, including: the significance of the public interest asserted; the nature, gravity, and potential consequences of the invasion of privacy occasioned by the disclosure; and the availability of alternative sources for the requested information. See, e.g., *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 45 (Iowa 1999) (recognizing that in balancing privacy interests against public's interest in disclosure of personal information in personnel records courts typically weigh the public purpose of disclosure, the gravity of the invasion, and the availability of alternative sources); *Child Prot. Group v. Cline*, 350 S.E.2d 541, 543 (W. Va. 1986) (holding that in deciding whether disclosure of employee's personal information would constitute unreasonable invasion of privacy courts must decide whether disclosure would result in "substantial invasion of privacy," the "extent or value of the public interest," the availability of the information "from other sources," and whether it is possible to provide relief "so as to limit the invasion"). In addition, the State's *Vaughn* index suggests that substantial nonpersonal information may be contained in the performance evaluations at issue, including sections outlining Lanman's major job duties and performance expectations. Therefore, should it determine that the balance favors nondisclosure, the court must also give careful consideration to redaction of the personal information and disclosure of the remainder. Finally, the court may consider the option of issuing a portion of its factual findings under seal if necessary to maintain confidentiality.

*Reversed and remanded for further proceedings consistent with the views expressed herein.*

¶ 15. **Allen, C.J. (Ret.),** Specially Assigned, concurring in part and dissenting in part. I agree that the trial court did not err in forgoing an in camera review of

the performance evaluation reports requested by plaintiff Barry Kade and determining that they fell within the exception for "personal documents" found in 1 V.S.A. § 317(c)(7). *Ante*, ¶ 11. I disagree, however, with the majority's conclusion that, on remand, the trial court must "balance the interests in privacy and disclosure" in deciding whether to release the requested information. *Ante*, ¶ 14. The plain language of § 317(c)(7) does not call for a balancing test, and the Court should not read such a requirement into the statute. Where, as here, the requested documents fall squarely within the exception, they should be shielded from disclosure. I therefore dissent.

¶ 16. Section 317(c)(7) provides that "personal documents relating to an individual, including information in any files maintained to hire, evaluate, promote or discipline any employee of a public agency" are exempt from disclosure under the Public Records Act. In interpreting this provision, our goal is to implement the Legislature's intent. *Herrick v. Town of Marlboro*, 173 Vt. 170, 173, 789 A.2d 915, 917 (2001). When a "statute is unambiguous and the words have plain meaning," we must "accept and enforce that plain meaning as the intent of the Legislature." *In re S. Burlington-Shelburne Highway Project*, 174 Vt. 604, 605, 817 A.2d 49, 51 (2002) (mem.). By its terms, § 317(c)(7) does not require a court, or a records custodian, to weigh an individual's privacy interest against the public's interest in disclosure in deciding whether the exception applies.

¶ 17. I am not persuaded that the Legislature's general statement of policy in 1 V.S.A. § 315 can be read to impose a balancing requirement on documents that fall within § 317(c)(7). Cf. *Trombley v. Bellows Falls Union High Sch. Dist. No. 27*, 160 Vt. 101, 110, 624 A.2d 857, 863 (1993) (interpreting term "personal documents" in § 317(c)(7) and noting

that, consistent with the legislative intent expressed in § 315, the Court "must also examine the public interest in disclosure"). It is apparent from the Public Records Act that when the Legislature intended balancing to occur, it included express language to this effect. See, e.g., 1 V.S.A. § 317(c)(12) (exempting from disclosure "records concerning formulation of policy where such would constitute a *clearly unwarranted* invasion of personal privacy, if disclosed") (emphasis added). The fact that the Legislature did not include a similar requirement in § 317(c)(7) "is strong evidence that a balancing test is inappropriate." *Chairman, Criminal Justice Comm'n v. Freedom of Info. Comm'n*, 585 A.2d 96, 100 (Conn. 1991).

¶ 18. Section 315 reflects the Legislature's recognition that the Public Records Act implicates competing interests in public disclosure and personal privacy. Consistent with these principles, the Legislature declared that "certain public records shall be made available to any person as hereinafter provided." 1 V.S.A. § 315. The Legislature then identified thirty-five specific exemptions to the public disclosure requirement. See *id.* § 317(c)(1)-(35). Presumably, the Legislature balanced the competing interests identified in § 315 in deciding what type of records would be exempt from disclosure. See *State ex rel. James v. Ohio State Univ.*, 637 N.E.2d 911, 913-14 (Ohio 1994) (stating that "in enumerating very narrow, specific exceptions to the public records statute, the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure"); see also *Chairman, Criminal Justice Comm'n*, 585 A.2d at 100 (reaching similar conclusion). This Court should not read an additional balancing requirement

into § 317(c)(7). See *State v. Jacobs*, 144 Vt. 70, 75, 472 A.2d 1247, 1250 (1984) (recognizing that it is not "a legitimate function of this Court to expand a statute by implication, that is, by reading into it something which is not there, unless it is *necessary* in order to make it effective").

¶ 19. Although other courts have employed balancing tests in determining whether certain documents should be disclosed, they generally have done so because balancing is required by the legislation at issue. In *National Archives & Records Administration v. Favish*, for example, the relevant statute exempted from disclosure information that "could reasonably be expected to constitute an *unwarranted* invasion of personal privacy." 541 U.S. 157, 160 (2004) (quotations omitted) (emphasis added). The Supreme Court recognized that the language of the statute required it to balance the "competing interests in privacy and disclosure." *Id.* at 172. Similarly, in *Child Protection Group v. Cline*, the relevant statute shielded personal information "if the public disclosure thereof would constitute an unreasonable invasion of privacy, unless the public interest by clear and convincing evidence requires disclosure in the particular instance." 350 S.E.2d 541, 543 (W. Va. 1986) (quotations omitted). The court concluded that the statutory language required it to "balance the public's need to know against the individual's right to privacy" in deciding whether records should be released. *Id.*

¶ 20. In a case with similar facts, the Connecticut Supreme Court held that the plain language of a privacy exemption under its state freedom of information act did not require a balancing of a public official's privacy rights against the public's right to the information. *Chairman, Criminal Justice Comm'n*, 585 A.2d at 100. The exemption at issue in that case shielded personnel files from disclosure when their disclosure "would constitute an invasion of personal privacy." *Id.* at 97 n.1 (quotation omitted). The court found the statutory language unambiguous, and it refused to read a balancing requirement into the statute in the absence of a clear statement that one was required. *Id.* at 100. The court explained that the structure of the freedom of information act reflected the legislature's attempt to balance competing interests, and when the legislature intended additional balancing to occur, it had included specific statutory language to that effect. *Id.* It thus concluded that neither the agency charged with reviewing requests under the act, nor the courts, were required to engage in a separate balancing procedure beyond the limits of the statute. *Id.*

¶ 21. I would reach a similar conclusion here. I recognize that disclosure is clearly favored under the Public Records Act, and that the Act should be liberally construed to serve its goals. 1 V.S.A. § 315. But "liberal construction does not allow us to stretch the language beyond legislative intent." *Elkins v. Microsoft Corp.*, 174 Vt. 328, 331, 817 A.2d 9, 13 (2002). Where, as here, the meaning of a statute is plain, it must be enforced according to its terms. *In re Middlebury Coll. Sales & Use Tax*, 137 Vt. 28, 31, 400 A.2d 965, 967 (1979). No balancing of interests is required under § 317(c)(7), and I would therefore hold that the records at issue in this appeal are exempt from disclosure.

Motion for reargument denied July 10, 2006.