Rutland Herald v. City of Rutland, No. 221-3-10 Rdcv (Cohen, J., Sept. 3, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Rutland Unit** | **Docket No. 221-3-10 Rdcv** |

**RUTLAND HERALD,**
    **Plaintiff**

    **v.**

**CITY OF RUTLAND,**
    **Defendant**

### DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, FILED MAY 3, 2010, and AFSCME COUNCIL 93, LOCAL 1201's MOTION TO INTERVENE AS DEFENDANT, FILED MARCH 23, 2010

The Rutland Herald seeks the release of certain documents relating to disciplinary actions and investigations by the Rutland Police Department and the City of Rutland Department of Public Works regarding employee use of agency computers to view pornography. The City of Rutland argues that although the documents are public records, they are exempt from public inspection under 1 V.S.A. § 317(c)(5) (records maintained during the course of disciplinary investigations) and § 317(c)(7) (personal documents relating to an individual).

The Rutland Herald has filed a motion for summary judgment. The City of Rutland has filed unredacted copies of the documents with the Court. The City has also submitted the documents with proposed redactions. The Court has conducted an in camera review.

AFSCME Council 93, Local 1201 seeks to intervene on behalf of the employees of the Police Department and the Department of Public Works. The Union represents these employees as their exclusive bargaining agent with the City of Rutland.

The Rutland Herald is represented by Robert B. Hemley, Esq. and Matthew B. Byrne, Esq. The City of Rutland is represented by City Attorney Andrew Costello. AFSCME Council 93, Local 1201 is represented by Michael D. Blair, Esq.

## Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the party is entitled to judgment as a matter of law. V.R.C.P. 56(c)(3). In response to an appropriate motion, judgment must be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). In determining whether a genuine issue of material fact exists, the court accepts as true allegations made in opposition to the motion for summary judgment, provided they are supported by evidentiary material. *Robertson v. Mylan Labs*, *Inc.,* 2004 VT 15, ¶ 15, 176 Vt. 356. The nonmoving party then receives the benefit of all reasonable doubts and inferences arising from those facts. *Woolaver v. State*, 2003 VT 71, ¶ 2, 175 Vt. 397.

## BACKGROUND

The Herald Association, Inc., d/b/a Rutland Herald, is a newspaper in Rutland, Vermont. The Rutland Herald has been investigating the potential that officers of the Rutland City Police Department have been viewing pornography, including possible child pornography, on department computers.

As part of its investigation the Rutland Herald previously requested access to a search warrant executed on the Rutland City Police Department in September 2009. In February 2010, the Vermont Superior Court, Rutland Unit, Criminal Division issued a

series of orders addressing the unsealing of the search warrant and related documents. In its Order of February 4, 2010, the court denied the State's effort to keep the search warrant sealed and ordered the warrant unsealed on February 9, unless appeal was taken. In its Order of February 10, the court rejected arguments made by the target of the warrant, who was involved in a child pornography investigation, that the privacy of the target constituted the "exceptional circumstances" needed to seal a returned search warrant. On February 12, the court denied the target's motion for reconsideration.

The affidavit filed to obtain the warrant revealed that public property—police department computers—had been used to view pornography and that public property had been used to store pornography. The police officer in question was placed on administrative leave on February 5, 2010. Through a public records request, the Rutland Herald was able to determine that there was only one officer, Sergeant David Schauwecker, on paid administrative leave for that time period. Thus, the Rutland Herald determined that Sergeant David Schauwecker was the target of the investigation into child pornography. The search warrant and related documents are publicly available from the Vermont Superior Court, Rutland Unit, Criminal Division.

Almost immediately after the unsealing of the documents, the Rutland Herald published articles concerning the investigation and the identity of the target. The Mayor of Rutland, Christopher Louras, and the Board of Alderman then made public statements concerning the investigation. The Mayor agreed that a city employee who deliberately accessed obscene materials on a city computer should be fired. At a public meeting attended by city residents, Rutland City officials questioned Rutland Police Chief Anthony Bossi about why the officer had not been suspended earlier. Chief Bossi stated

that he did not have sufficient information to take action.

Later, on April 7, 2010, the City of Rutland's Board of Civil Authority convened to conduct a hearing regarding Sgt. David Schauwecker's employment with the Rutland Police Department. The Board found, among other things, that Sgt. Schauwecker had taken personal possession of pornographic materials obtained by the police department as evidence in pending criminal investigations. On April 19, the Board of Civil Authority issued its decision, unanimously finding that Sgt. David Schauwecker's conduct constituted just cause to terminate him from his employment with the police department.

On February 15, 2010, the Rutland Herald made public records requests to City of Rutland Mayor Christopher Louras, Rutland City Attorney Andrew Costello, Rutland City Police Chief Anthony Bossi, and Rutland City Police Captain Scott Tucker.

In the request letters directed at Mayor Christopher Louras and City Attorney Andrew Costello, the Rutland Herald requested photocopies of the following records:

- All electronic or written communication to and from you or your office regarding John Doe (Sgt. David Schauwecker) of the Rutland Police Department, the search warrant related to John Doe and/or any supporting documents, between the dates of Feb. 1, 2010, and completion of this request.

- Any electronic or written communication to and from you or your office relating to City computer policy, abuse of city equipment and/or viewing pornography, either on city equipment or by city personnel, since 2004.

- Any electronic or written communication to and from you and your office relating to computer service or repair of Rutland City computers involving pornography or misuse of equipment since 2004.

In the request letters directed at Police Chief Anthony Bossi and Police Captain Scott Tucker, the Rutland Herald requested photocopies of the following records:

- All electronic or written communication to and from the Rutland City Police Department regarding John Doe (Sgt. David Schauwecker) of the

4

Rutland Police Department, the search warrant related to John Doe and/or any supporting documents, between the dates of Feb. 1, 2010, and completion of this request.

- Any documents relating to computer policy, abuse of city equipment and/or viewing of pornography, either on city equipment or by on-duty police personnel, since 2004.

- Any documents regarding computer service or repair of Rutland City Police Department Computers involving pornography or misuse of equipment since 2004.

On February 24, 2010, City Attorney Andrew Costello responded to the requests on behalf of himself, Mayor Christopher Louras, Police Chief Anthony Bossi, and Police Captain Scott Tucker. City Attorney Costello denied access to certain documents. These documents are described in the City's *Vaughn* index[1] that was filed in support of its opposition to the motion for summary judgment. In total, the documents come to 645 pages.

The *Vaughn* Index describes the documents as follows:

(1) A letter dated July 12, 2004, from Chief Bossi to R.P.D. employee #1, relating the employee's status pending completion of an internal affairs investigation, #04-003, which dealt with an allegation of viewing pornography while on duty. The City cited 1 V.S.A. § 317(c)(5) and (c)(7) as its basis for non-disclosure.

(2) A letter dated September 10, 2004, from Chief Bossi to R.P.D. employee #1 relating Chief Bossi's imposition of discipline on the employee for viewing pornography while on duty, after the internal affairs investigation for case #04-003. The City cited 1 V.S.A. § 317(c)(5) and (c)(7) as its basis for non-disclosure.

(3) The complete record of the internal affairs investigation #04-003, dealing with the alleged viewing of pornography by R.P.D. employee #1 while on duty. The City cited 1 V.S.A. § 317(c)(5) and (c)(7) as its basis for non-disclosure.

---

[1] The term "*Vaughn* index" derirves from *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), which involved a request for documents under the federal Freedom of Information Act. *Kade v. Smith*, 2006 VT 44, ¶ 3 fn.3, 180 Vt. 554 (mem.).

(4) A letter dated February 24, 2010, from Chief Bossi to R.P.D. employee #2, relating Chief Bossi's imposition of discipline on the employee for the viewing of pornography while on duty, after the internal affairs investigation for case #10-02. The City cited 1 V.S.A. § 317(c)(5) and (c)(7) as its basis for non-disclosure.

(5) The complete record of the internal affairs investigation #10-02, dealing with alleged viewing of pornography by R.P.D. employee #2 while on duty. The City cited 1 V.S.A. § 317(c)(5) and (c)(7) as its basis for non-disclosure.

(6) A letter dated March 25, 2010, from Chief Bossi to Sgt. David Schauwecker informing Sgt. Schauwecker of Chief Bossi's recommendation to the Board of Civil Authority regarding his termination. The City cited 1 V.S.A. § 317(c)(5) and (c)(7) as its basis for non-disclosure.

(7) A letter dated March 23, 2010, from Chief Bossi to Sgt. David Schauwecker informing Sgt. Schauwecker of an upcoming meeting regarding his employment. The City cited 1 V.S.A. § 317(c)(5) and (c)(7) as its basis for non-disclosure.

(8) The complete record of the internal affairs investigation #10-03, dealing with alleged viewing of pornography by Sgt. David Schauwecker while on duty. The City cited 1 V.S.A. § 317(c)(5) and (c)(7) as its basis for non-disclosure.

(9) A letter dated January 17, 2007, from Department of Public Works Commisioner Paul Clifford to D.P.W. employee #1, setting forth the Commissioner's imposition of discipline on employee for employee's violation of the City internet usage policy. The City cited 1 V.S.A. § 317(c)(7) as its basis for non-disclosure.

(10)   A letter dated January 17, 2007, from Department of Public Works Commisioner Paul Clifford to D.P.W. employee #2 setting forth the Commissioner's imposition of discipline on employee for employee's violation of the City internet usage policy. The City cited 1 V.S.A. § 317(c)(7) as its basis for non-disclosure.

The City submitted unredacted copies of the documents in the event that the Court chose to conduct an in camera review. On June 17, 2010, the Court issued an entry order in which it stated that it would conduct an in camera review of the documents. A hearing was held on July 16, regarding the issue of intervention. The parties also made arguments regarding the motion for summary judgment, access to the documents, and redactions. At

the close of the hearing, the Court ruled that, generally, the public interest in disclosure of the documents outweighed any individual's privacy interest. The Court stated that the issue of whether redactions were appropriate was still disputed. The Court also stated that if the identities of the individuals in the documents were not redacted, then the union, AFSCME Council 93, Local #1201, would be allowed to intervene.

The Court issued an entry order on July 26, regarding proposed redactions. It ordered the City to submit a separate document detailing the reasons for each of its redactions.

On August 2, the City submitted redacted copes of the documents, numbered 1 through 645, along with a list of the reasons for each redaction. These documents included redacted copies of transcribed interviews and files taken from a filed CD. These documents had not previously been submitted in unredacted form. Therefore, the Court ordered the City to file unredacted copies of all 645 documents.

The Court also invited the Rutland Herald to state its position regarding the disclosure of numerous images from websites and emails that are included in the documents. The Rutland Herald states that it wishes to review all images in unredacted form with the help of a law enforcement expert in order to determine if any of the images should have constituted cause for a criminal investigation.

The City has submitted all 645 documents in unredacted form. The Court has taken the issue of redactions under advisement in order to review the documents to determine which redactions, if any, are necessary.

## DISCUSSION

### *I. Motion for Summary Judgment*

The policy of the Vermont Public Records Act is to provide for free and open examination of records consistent with Chapter I, Article 6 of the Vermont Constitution, which sets forth "[t]hat all power being originally inherent in and co[n]sequently derived from the people, therefore, all officers of government, whether legislative or executive, are their trustees and servants; and at all times, in a legal way, accountable to them." Vt. Const. ch. I, art. 6; 1 V.S.A. § 315. In enacting the Public Records Act, the Legislature recognized that "[o]fficers of government are trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions even though such examination may cause inconvenience or embarrassment." 1 V.S.A. § 315.

The Vermont Supreme Court has stated that the Public Records Act is to be "construed liberally," implementing "the policy that the public interest clearly favors the right of access to public documents and public records." *Trombley v. Bellows Falls Union H.S.*, 160 Vt. 101, 106-07 (1993) (citing 1 V.S.A. § 315). It has also acknowledged, however, that the "public's interest in overseeing the decisions of its governmental officials must be balanced against the people's right to privacy in their personal and economic pursuits." *Norman v. Vermont Office of Court Administrator*, 2004 VT 13, ¶ 4, 176 Vt. 593 (mem.) (citing 1 V.S.A. § 315; *Trombley*, 160 Vt. at 109-10).

Under the Act, "public agency" means "any agency, board, committee, department, branch, instrumentality, commission, or authority of any political subdivision of the state." 1 V.S.A. § 317(a). Thus, the definition includes the Rutland City Police Department and the Rutland City Department of Public Works.

8

A "public record" or "public document" means "any written or recorded information, regardless of physical form or characteristics, which is produced or acquired in the course of public agency business." 1 V.S.A. § 317(b). Therefore, the letters and internal affairs investigation records, as well as the submitted CD, are "public records."

The City of Rutland argues that the documents are exempt from public inspection under 1 V.S.A. § 317(c)(5) and (c)(7). The general rule is that exceptions to the Public Records Act "must be construed narrowly to implement the strong policy in favor of disclosure." *Norman*, 2004 VT 13, ¶ 4; see also *Trombley*, 160 Vt. at 107 (exceptions should be construed strictly against the custodians of the records and any doubts should be resolved in favor of disclosure). In a dispute over access, the burden is on the agency to sustain its action. *Trombley*, 160 Vt. at 107 (citing 1 V.S.A. § 319(a)). In relying on an exception to disclosure, the agency "cannot discharge this burden by conclusory claims or pleadings; it must make the specific factual records necessary to support the exemption claim." *Id.* (internal quotations omitted).

The City argues that the public records are exempt from public disclosure under 1 V.S.A. § 317(c)(5) and (c)(7). Subsection (c)(5) exempts from public disclosure those public records "maintained on any individual or compiled in the course of a . . . disciplinary investigation by any police or professional licensing agency; provided, however, records relating to management and direction of a law enforcement agency . . . shall be public." Construed narrowly, however, the exception appears to have a temporal limitation—"those [files] maintained on any individual or compiled in the course of a . . . disciplinary investigation[.]" 1 V.S.A. § 317(c)(5). That is, the exception applies only during the "course of" an investigation, not when investigations have been completed, as

9

is the case here.

Furthermore, the letters and internal affairs investigation records relate directly to the management of the police department. See 1 V.S.A. § 317(c)(5). These records demonstrate how the police department investigates its own employees—officials who are entrusted by the people to investigate crimes and are given the power to arrest. The people of Vermont have the right to review the decisions of those public officials in charge of the police department, even though such examination may cause inconvenience or embarrassment. 1 V.S.A. § 315. Review of these records allows the people to determine if the police department is properly managed; whether the department follows its own internal affairs investigation procedure and whether the police department properly decides whether or not to conduct criminal investigations of its own employees. Therefore, these public records relate to management of the police department and they are not exempted from disclosure under § 317(c)(5).

Section 317(c)(7) exempts from public disclosure those public records that are "personal documents relating to an individual, including information in any files maintained to hire, evaluate, promote or discipline any employee of a public agency, information in any files relating to personal finances, medical or psychological facts concerning any individual or corporation."

The term "personal documents" is vague and potentially limitless. *Kade v. Smith*, 2006 VT 44, ¶ 8, 180 Vt. 554 (mem.) (citing *Trombley*, 160 Vt. at 110). Thus, consistent with the Act's underlying policy, this exception must be narrowly construed "to apply only when the privacy of the individual is involved." *Kade*, 2006 VT 44, ¶ 8 (quoting *Trombley*, 160 Vt. at 110). Therefore, the exception applies only to those documents that

reveal "intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends." *Kade*, 2006 VT 44, ¶ 8 (quoting *Trombley*, 160 Vt. at 110).

Whether public records relating to disciplinary actions and performance evaluations contain "personal" information within this exception is a "fact-specific determination." *Norman*, 2004 VT 13, ¶ 9. The Supreme Court has acknowledged, however, that there may be instances where information in disciplinary records may be "highly offensive" and therefore properly withheld. See *Id*. (citing cases from other states addressing the personal and potentially embarrassing nature of employment disciplinary records). Notwithstanding that acknowledgment, the Court has also implied that there is a distinction between general performance evaluations and disciplinary actions dealing with specific instances of misconduct. For example, in *Kade v. Smith*, 2006 VT 44, ¶ 1, the requestor sought performance evaluations of the superintendent of a state correctional facility. The trial court failed to conduct an in camera review before finding the personal-documents exception applied. *Id*. at ¶ 5-6. The Supreme Court reversed the trial court's decision, stating, "[w]hile it is true, as the trial court noted, that performance evaluations are not investigative in nature and focus on general performance rather than specific instances of misconduct, it is nevertheless reasonable to believe that they might shed light on the quality and extent of the DOC's supervision of Lanman [the superintendent], on its expectations of superintendents generally, and on the overall level of accountability within the DOC." *Id*. at ¶ 13.

Under the Act, even if the "personal information" does carry a privacy interest, the individual's interest in personal privacy must be balanced against "the public interest

11

in disclosure." *Norman*, 2004 VT 13, ¶ 8 (quoting *Trombley*, 160 Vt. at 110). In balancing the interests in privacy and disclosure, the court "must consider not only the relevance, if any, of the records to the public interest for which they are sought, but any other factors that may affect the balance, including: the significance of the public interest asserted; the nature, gravity, and potential consequences of the invasion of privacy occasioned by the disclosure; and the availability of alternative sources for the requested information." *Kade*, 2006 VT 44, ¶ 14.

Here, the City first argues that the public should not have access to the disciplinary letters and internal affairs records at all. Second, if the documents are released, the City has submitted proposed redactions. These include, but are not limited to, the names of the employees, their positions, and any other identifying information, including the dates of the suspensions. The Court will first address public access to the disciplinary letters and investigation records concerning employees of the Rutland Police Department. It will then turn to the two disciplinary letters concerning employees of the Rutland Department of Public Works.

Balancing the interests in privacy and disclosure, the Court first considers the relevance of the records to the public interest for which they are sought. *Kade*, 2006 VT 44, ¶ 14. These records are highly relevant to the public interest in determining whether the police department follows its own internal affairs investigation procedure, and whether the police department properly decides whether or not to conduct criminal investigations of its own employees. The records demonstrate how investigations are commenced and conducted, and how suspensions are handed down.

The significance of this public interest is of the highest degree. See *Id*. "The

12

public has an interest in learning about the operations of a public agency, the work-related conduct of public employees, in gaining information to evaluate the expenditure of public funds, and in having information openly available to them so that they can be confident in the operation of their government." *City of Baton Rouge/Parish of East Baton Rouge v. Capital City Press, L.L.C.*, 4 So.3d 807, 821 (La. Ct. App. 2008) (citing *Fincher v. State*, 497 S.E.2d 632, 636 (Ga. Ct. App. 1998)). Employees of the police department are public officials are who have taken an oath to uphold the law, and who are entrusted by the people to investigate crimes, handle evidence, and arrest citizens. Their actions directly affect the deprivation of a person's freedom. "The public should be ensured that both the activity of public employees suspected of wrongdoing and the conduct of those public employees who investigate the suspects is open to public scrutiny." *City of Baton Rouge/Parish of East Baton Rouge v. Capital City Press*, 4 So.3d at 821 (quoting *Fincher*, 497 S.E.2d at 636) (internal quotations omitted).

Next, the Court considers the nature, gravity, and potential consequences of the invasion of privacy occasioned by the disclosure. *Kade*, 2006 VT 44, ¶ 14. The disputed public records concern investigations into the viewing of pornography—possibly child pornography—and the sending of pornography by email by employees of the police department on public computers while on duty.

Although the gravity and potential consequences of the disclosure are of a high degree, the Court does not find any legitimate reasonable expectations of privacy on behalf of any the employees who were investigated. "These investigations were not related to private facts; the investigations concerned public employees' alleged improper activities in the workplace." See *City of Baton Rouge/Parish of East Baton Rouge v.*

13

*Capital City Press*, 4 So.3d at 821 (finding disclosure of internal affairs investigation records proper where police officers were investigated and punished for brutality and excessive force). Furthermore, "[a]lthough police officers may have a legitimate privacy interest in certain narrowly circumscribed portions of files concerning their off-duty, private conduct, they do not enjoy a reasonable expectation of privacy with respect to records concerning only how they discharge their official duties." *Id.* at 821 fn.19; see also *Fincher*, 497 S.E.2d at 637 (finding that official of State Board of Pardons & Paroles of Georgia had no legitimate expectation of privacy as to investigatory report that addressed his sexual harassment of a co-worker and other misconduct while in the course of his employment for the state; disclosure of report was proper).

The City argues that public access to the documents and disclosure of the employees' identities will reveal "information that might subject the person[s] to embarrassment, harassment, disgrace, or loss of employment or friends[,]" and that this outweighs any public interest in disclosure. See *Kade*, 2006 VT 44, ¶ 8. However, the "personal documents" exception under § 317(c)(7) must be narrowly construed "to apply only when the privacy of the individual is involved." *Kade*, 2006 VT 44, ¶ 8. It applies only to those "intimate details of a person's life." *Id.* These employees had little expectation that their actions or identities would remain private when they viewed and sent pornography on public computers while on duty as public employees. These were not "intimate details of a person's life." Therefore, there was little, if any, privacy interest involved.

At the hearing and in its proposed redactions, the City argued that disclosure of any identifying information will render the redaction of only the employees' names to be

14

an exercise in futility. Specifically, the City argues that the dates of the employees' suspensions must be redacted because their disclosure will allow the Rutland Herald to identify the employees through a subsequent public records request; in the same manner it identified Sgt. Schauwecker. The Court does not agree.

The public has a significant interest in learning the dates of the suspensions to review if the police department actually suspended the employees; to review how long the investigations took; and to review how soon the employees were suspended after the findings of misconduct. This information is vital in ensuring "that both the activity of public employees suspected of wrongdoing and the conduct of those public employees who investigate the suspects is open to public scrutiny." *City of Baton Rouge/Parish of East Baton Rouge v. Capital City Press*, 4 So.3d at 821 (quoting *Fincher*, 497 S.E.2d at 636).

Furthermore, a failure to disclose the identities of those employees who were disciplined minimizes the hard work and dedication shown by the vast majority of the Rutland City Police Department. The redaction of the disciplined employees' identities would result in public mistrust of every employee of the police department. "It would be an incongruous result to shield from the light of public scrutiny the workings and determinations of a process whose main purpose is to inspire public confidence." *City of Baton Rouge/Parish of East Baton Rouge v. Capital City Press*, 4 So.3d at 821 (citing *Worcester Telegram & Gazette Corp. v. Chief of Police of Worcester*, 787 N.E.2d 602, 608 (Mass. Ct. App. 2003)).

Finally, there are no alternative sources for the requested information. See *Kade*, 2006 VT 44, ¶ 14. These public records are internal affairs investigations records and

disciplinary letters, which contain information that is not otherwise available.

In balancing the interests in privacy and disclosure under the considerations set forth in *Kade*, 2006 VT 44, ¶ 14, the Court finds that disclosure heavily outweighs any privacy interests the police department employees had in their actions and identities. The manner in which the employees of the police department prosecute their duties is of "a large and vital public interest that outweighs their desire to remain out of the public eye." See *Burton v. York County Sherriff's Dep't*, 594 S.E.2d 888, 895 (S.C. Ct. App. 2004) (finding disclosure of disciplinary records and suspension records of sheriff's deputies was proper where the deputies had been investigated for sexual activity in patrol cars).

The Public Records Act was enacted to provide free and open examination of records consistent with Chapter I, Article 6 of the Vermont Constitution, which provides that all officers of government are the people's servants and they are at all times accountable to the people. Vt. Const. ch. I, art. 6; 1 V.S.A. § 315. This includes accountability as to the proper use of public computers by public employees and the proper internal investigation of employees by the police department for violations of computer usage policy. Public access to the submitted police department internal investigation records and disciplinary letters is proper.

While the Court will not redact the public employees' identities and suspension dates from the documents, there is certain information in the public records that is "personal." The Court will redact any information regarding uninvolved citizens, confidential complaining witnesses, and family members of the employees. The Court will also redact all personal information such as any medical information, home addresses, telephone numbers, social security numbers, drivers' license numbers,

16

employee identification numbers, dates of birth, and email addresses. The Court will issue a separate, sealed decision stating its findings for each redaction. Although the Court has done its best to review the documents, it asks that if any of the ordered redactions are mistakenly not redacted in the documents, that the parties notify the Court of the oversight.

The Court will not release the submitted CD because the Court cannot make redactions to it. However, the information contained on the CD has already been printed into document form for review. Also, the Rutland Herald is not entitled to disclosure of a performance evaluation of one of the employees. Although this evaluation contains information regarding this issue, overall it is a general review of the employee's job performance, as opposed to a specific investigation. See *Kade*, 2006 VT 44, ¶ 13-14.

The Court will also withhold documents numbered 48-53, 114-220, and 264-271 because they contain images of possible child pornography. This step is necessary to protect the identities of those who are possibly minors and are depicted engaging in sexual conduct. Furthermore, it is a crime to knowingly possess images that depict minors engaging in sexual conduct. See 13 V.S.A. § 2827. Therefore, public release of such images is not proper.

Furthermore, the documents numbered 56-64 will be withheld because they are a printout of the employee's computer folders page. This information could potentially implicate the privacy interests of uninvolved citizens who were under investigation at the time.

However, the Court will allow the Rutland Herald to conduct a review of the withheld documents in chambers with its counsel and a law enforcement expert present.

17

Both the City of Rutland and AFSCME Council 93, Local #1201 may have their counsel present, as well as a law enforcement expert of their own. Documents numbered 48-53, 56-64, 114-220, and 264-271 will not be redacted in any way. The review will be on the record.

The Court now turns to the two disciplinary letters for the department of public works employees. The letters were submitted in the response to the Rutland Herald's request for "[a]ny electronic or written communication to and from you or your office relating to City computer policy, abuse of city equipment and/or viewing pornography, either on city equipment or by city personnel, since 2004." This was a broad public records request by the Rutland Herald that was not limited to the viewing of pornography on city computers.

There are no investigation records accompanying these documents. The disciplinary letters simply acknowledge that the reason for the suspensions is violation of the City's computer usage policy; they do not state the infraction. Therefore, unlike the police department documents, there is no context to the discipline of these public works employees. This makes it difficult for the Court to determine the weight of the public interest in disclosure under *Kade*. The letters shed no light on the operations of the department of public works, the work-related conduct of its employees, or the expenditure of public funds. See *City of Baton Rouge/Parish of East Baton Rouge v. Capital City Press*, 4 So.3d at 821.

Nevertheless, there is a public interest in knowing about computer abuse by public employees using public resources. The Court also finds that these employees had little, if any, privacy interest in their use of public computers while on duty as public

18

employees. However, without further context, the Court finds that redaction of the employees' names and suspension dates is proper. The Court acknowledges that the City cannot accomplish the redaction of identifying information simply by not disclosing all investigation records that may exist. Thus, this ruling does not preclude the Rutland Herald from making more specific, additional public records requests to obtain such files.

Any of the parties, including the intervenor, will have 10 days to file an appeal with the Supreme Court. If any of the parties file for appeal within the 10 days, the Court will stay the disclosure of the documents until a decision by the Supreme Court. If the parties do not appeal within 10 days, then the Court will release the documents with the above-mentioned redactions. The in-chambers document review of the questionable images will then be scheduled.

Finally, when the City submitted the unredacted version of the documents, it accidentally sent blank copies for documents numbered 403-413. The Court has included the redacted version of the documents in the documents it will disclose. The City shall file unredacted versions of documents numbered 403-413 with the Court following either the 10 days if the parties do not appeal, or the Supreme Court's decision if appeal is taken.

### II. Motion to Intervene

AFSCME Council 93, Local #1201 has filed a motion to intervene on behalf of the employees of the Rutland Police Department and the Rutland Department of Public Works. AFSCME Council 93, Local #1201 (the union) is the sole and exclusive bargaining representative for employees working for the City of Rutland in department of public works and the police department.

19

It seeks intervention of right under V.R.C.P. 24(a), but the Court also finds that intervention is appropriate under V.R.C.P. 24(b)(2), which allows for permissive intervention. The union argues that disclosure of employee disciplinary records will negatively impact those individual employees that it represents as well as all bargaining unit members who work for the City of Rutland. It argues that disclosure will violate the employees' right to privacy and confidentiality, which is protected through the Collective Bargaining Agreement with the City. At the hearing, the Court ruled that if the names of the employees were not to be redacted, then the union would be allowed to intervene.

Although the Court has found that the privacy interests of the employees are outweighed by the public's interest in disclosure of the documents, the union should be able to intervene to protect any argued privacy interests of the employees. The disposition of the action may as a practical matter impair or impede the union's ability to protect the members it represents.

The Rutland Herald argues that the union should not be allowed to intervene because it has not filed an answer or complaint in the proceeding. However, the union has fulfilled the pleading requirement of V.R.C.P. 24(c) by filing a motion to dismiss along with its motion to intervene. The motion to dismiss sets forth the union's claim or defense for which intervention is sought, and demonstrates that its claim or defense and the main action "have a question of law or fact in common." V.R.C.P 24(b). Although the City of Rutland also opposes disclosure, the Court finds it fair to allow the union to represent the employees as well, regarding their privacy interests.

The Court previously ruled that it would address the union's motion to dismiss if the union was allowed to intervene. A motion to dismiss for failure to state a claim upon

which relief can be granted should not be granted unless it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief; in reviewing the disposition of a Rule 12(b)(6) motion to dismiss, the Court assumes that all factual allegations pleaded in the complaint are true, and the Court accepts as true all reasonable inferences that may be derived from plaintiff's pleadings and assumes that all contravening assertions in defendant's pleadings are false. *Richards v. Town of Norwich*, 169 Vt. 44, 48-49 (1999) (citations omitted). For the reasons set forth in the analysis granting the Rutland Herald's motion for summary judgment, the union's motion to dismiss is denied.

**ORDER**

(1)   The Rutland Herald's Motion for Summary Judgment, filed May 3, 2010, is GRANTED.

(2)   The Court will redact certain information from the public records and issue a separate, sealed opinion setting forth the reason for each redaction.

(3)   AFSCME Council 93, Local #1201's Motion to Intervene, filed March 23, 2010, is GRANTED.

(4)   AFSCME Council 93, Local #1201's Motion to Dismiss, filed March 23, 2010, is DENIED.

(5)   The Court will release the documents if the parties do not file for appeal within 10 days. If any of the parties file for appeal within the 10 days, the Court will stay the disclosure of the documents until a decision by the Supreme Court. If the parties do not appeal within 10 days, then the Court will release the documents with the above-referenced redactions.

(6)   If the parties do not appeal within 10 days, an in-chambers document review will be scheduled for the documents numbered 48-53, 56-64, 114-220, and 264-271. If the parties do appeal within 10 days, the review will not be scheduled until a decision by the Supreme Court.

(7)   The City of Rutland shall file unredacted versions of documents numbered 403-413, either after the 10 days if no appeal is taken, or after the Supreme Court's decision if appeal is taken.

Dated at Rutland, Vermont this _____ day of _____, 2010.


_____
Hon. William Cohen
Superior Court Judge