2012 VT 26

## Rutland Herald v. City of Rutland and AFSCME Council 93, Local 1201

[48 A.3d 568]

No. 10-344

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed April 6, 2012

388

*Robert B. Hemley* and *Matthew B. Byrne* of *Gravel and Shea*, Burlington, for Plaintiff-Appellee.

*Andrew Costello*, Office of the City Attorney, Rutland, for Defendant-Appellant.

*Michael Blair*, Rutland, for Intervenor-Appellant AFSCME Council 93, Local 1201.

*William H. Sorrell*, Attorney General, and *Mark J. Di Stefano*, Assistant Attorney General, Montpelier, for Amicus Curiae State of Vermont.

¶ 1. **Reiber, C.J.** In this case, we again confront the proper scope of the investigatory records exemption under the Vermont Access to Public Records Act (PRA), 1 V.S.A. § 317(c)(5). At issue are documents that relate to the investigation and discipline of City of Rutland employees for viewing pornography, including possible child pornography, at work. The City challenges a superior court order requiring it to disclose certain documents to plaintiff Rutland Herald. AFSCME Council 93, Local 1201, the bargaining agent for nonmanagerial employees of the Police Department and the Department of Public Works (DPW), also appeals. The State of Vermont has filed an amicus brief.

¶ 2. The City argues that the documents at issue are exempt under § 317(c)(5) as records "compiled in the course of a criminal

or disciplinary investigation by any police or professional licensing agency," and under 1 V.S.A. § 317(c)(7) as "personal documents relating to an individual." AFSCME is concerned with documents that relate to the imposition of discipline in 2004 against two DPW employees for viewing pornography at work, and the imposition of discipline in 2007 against a police officer on similar grounds. AFSCME maintains that these records should be exempt under § 317(c)(7). We affirm in part, and reverse and remand in part.

¶ 3. The superior court found the following facts undisputed. The Herald has been investigating whether city police officers have been viewing pornography at work. In February 2010, the Herald obtained access to a September 2009 search warrant, which indicated that police department computers had been used to view and store pornography. The day after the warrant materials were unsealed, a police officer was placed on administrative leave. Through a public records request, the Herald determined that the officer was Sergeant David Schauwecker and that he was the target of a child pornography investigation. The Herald published articles identifying Schauwecker and discussing the investigation. At a public meeting, the police chief stated that he had not suspended Schauwecker any sooner because he did not have sufficient information to do so. Schauwecker was subsequently fired by the board of civil authority.

¶ 4. In connection with its investigation, the Herald requested documents from the City under the PRA. As relevant here, the City refused to produce the following records: (1) a 2004 letter from the police chief to "RPD employee #1" regarding the employee's status pending completion of an internal affairs investigation based on an allegation of viewing pornography on duty; (2) a 2004 letter from the chief to RPD employee #1 regarding the chief's imposition of discipline for viewing pornography on duty; (3) the complete record of the internal affairs investigation with respect to RPD employee #1; (4) a 2010 letter from the chief to "RPD employee #2" regarding the imposition of discipline for viewing pornography on duty; (5) the complete record of the internal affairs investigation of RPD employee #2; (6) a letter from the chief to Schauwecker informing him of the chief's recommendation to the board of civil authority as to his termination; (7) a letter from the chief informing Schauwecker of an upcoming meeting regarding his employment; (8) the complete

record of the internal affairs investigation dealing with Schauwecker's alleged viewing of pornography while on duty; (9) a January 2007 letter from the DPW Commissioner to "DPW employee #1" setting forth the Commissioner's imposition of discipline for violation of the City's internet usage policy; and (10) a similar January 2007 letter to "DPW employee #2." The City asserted that items (1)-(8) were exempt under both § 317(c)(5) and § 317(c)(7), and that items (9) and (10) were exempt under § 317(c)(7).

¶ 5. Unable to procure these documents by request, the Herald filed suit and moved for summary judgment in its favor. AFSCME moved to intervene and to dismiss the case. AFSCME asserted that disclosure of employee disciplinary records would violate the employees' rights to privacy and confidentiality. The City produced a *Vaughn* index of the withheld documents and provided copies of the documents for in camera review.

¶ 6. Following a hearing and in camera review, the court issued a decision directing that the documents be released with certain redactions. At the outset, the court acknowledged the "strong policy favoring access to public records and documents." *Springfield Terminal Ry. v. Agency of Transp.*, 174 Vt. 341, 345, 816 A.2d 448, 452 (2002). It noted as well that PRA exemptions are construed strictly against the custodian of such records, and that the custodian must do more than provide "conclusory claims or pleadings" to establish that the exemption applies. *Finberg v. Murnane*, 159 Vt. 431, 438, 623 A.2d 979, 983 (1992); see also 1 V.S.A. § 319(a) (agency bears burden of justifying its decision to deny access).

¶ 7. With these principles in mind, the court first considered whether items (1)-(8) were exempt from disclosure under § 317(c)(5). That provision exempts:

> records dealing with the detection and investigation of crime, including those maintained on any individual or compiled in the course of a criminal or disciplinary investigation by any police or professional licensing agency; provided, however, records relating to manage-ment and direction of a law enforcement agency and records reflecting the initial arrest of a person and the charge shall be public.

*Id.*[1] The court did not address, as a threshold matter, whether the documents were "records dealing with the detection and investigation of crime." Instead, it focused on whether they were records "maintained on any individual or compiled in the course of a criminal or disciplinary investigation by any police . . . agency."

¶ 8. Construing § 317(c)(5) narrowly, the court found that it applied only during the "course of" an investigation, and not, as in this case, when an investigation was complete. The court thus concluded that items (1)-(8) were not exempt from disclosure under this provision.

¶ 9. The court also found that these records related directly to the "management" of the police department, and therefore were also disclosable under the proviso language of § 317(c)(5). The court explained that the records demonstrated how the police department investigated its own employees — officials who were entrusted by the people to investigate crimes and were given the power to arrest. It reasoned that the people of Vermont have the right to review the decisions of those public officials in charge of the police department, even though such examination may cause inconvenience or embarrassment. See 1 V.S.A. § 315 (recognizing that it is the policy of PRA "to provide for free and open examination of records," and that "[o]fficers of government are trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions even though such examination may cause inconvenience or embarrassment").

¶ 10. Review of these records, the court continued, allowed the people to determine if the police department was properly managed; whether the department followed its own internal affairs investigation procedure; and whether the police department properly decided whether to conduct criminal investigations of its own employees. The court thus concluded that these records were not exempt from disclosure under § 317(c)(5).

¶ 11. The court turned next to § 317(c)(7), which exempts:

> personal documents relating to an individual, including information in any files maintained to hire, evaluate, promote or discipline any employee of a public agency, information in any files relating to personal finances,

---

[1] This statutory provision was amended in 2011; we use the version of the statute in effect at the time of the decision below.

medical or psychological facts concerning any individual or corporation; provided, however, that all information in personnel files of an individual employee of any public agency shall be made available to that individual employee or his or her designated representative.

As the court recognized, application of this provision requires the court to balance the public interest in disclosure against the harm to the individual. See *Kade v. Smith*, 2006 VT 44, ¶ 14, 180 Vt. 554, 904 A.2d 1080 (mem.); *Trombley v. Bellows Falls Union High Sch. Dist. No. 27*, 160 Vt. 101, 109, 624 A.2d 857, 863 (1993).

¶ 12. The court concluded that the balance tipped in favor of disclosure here. It found the records highly relevant to the public's interest in determining if the police department followed its own internal affairs investigation procedure, and if the police department properly decided whether to conduct criminal investigations of its own employees. The records demonstrated how investigations were commenced and conducted, and how suspensions were handed down. The court found the significance of this public interest to be of the highest degree.

¶ 13. The court found the privacy interests at stake far less weighty. While the gravity and potential consequences of the invasion of privacy occasioned by the disclosure was high, the court found that the employees could have little expectation that their actions or identities would remain private when they viewed and sent pornography on public computers while on duty as public employees. It reasoned that they had no legitimate reasonable expectation of privacy in records that concerned how they discharged their official duties. The court thus found little, if any, privacy interest involved, and it held that the records were not exempt from disclosure under § 317(c)(7).

¶ 14. In reaching its conclusion, the court rejected the City's assertion that it should redact the names of the officers and their suspension dates. It found that the public had a significant interest in learning the suspension dates to review if the police department actually suspended the employees; to review how long the investigations took; and to review how soon the employees were suspended after the findings of misconduct. This information was vital, the court explained, in ensuring "that both the activity of public employees suspected of wrongdoing and the conduct of those public employees who investigate the suspects is open to

public scrutiny." *City of Baton Rouge/Parish of E. Baton Rouge v. Capital City Press, L.L.C.*, 4 So. 3d 807, 821 (La. Ct. App. 2008) (citation omitted).

¶ 15. The court next considered the disciplinary letters sent to the DPW employees (items (9) and (10)). These letters stated that the employees in question were suspended for violating the City's computer usage policy, but they did not identify the particular infraction.[2] There were no investigation records accompanying these documents. Unlike the police department documents, therefore, the court had no context in which to evaluate the discipline of these employees. This made it difficult for the court to weigh the public interest in disclosure. The court found that the letters shed no light on the operations of the DPW, the work-related conduct of its employees, or the expenditure of public funds.

¶ 16. Nonetheless, the court found that the public had an interest in knowing about computer abuse by public employees using public resources. Consistent with its earlier analysis, the court also found that these employees had little, if any, privacy interest in their use of public computers while on duty as public employees. Without further context, however, the court considered it appropriate to redact the employees' names and suspension dates. For the reasons set forth above, the court also rejected AFSCME's arguments regarding § 317(c)(7).

¶ 17. As part of its decision, the court withheld 121 documents that contained images of possible child pornography. The court stated, however, that the Herald could review these documents in chambers with its counsel and a law enforcement expert present. The court did not identify the purpose of such review, nor did it cite any legal authority in support of its decision to allow the Herald to view these documents. The City appealed from the court's final order, as did AFSCME.[3]

¶ 18. On appeal, the City reiterates its position that items (1)-(8) are exempt from public access under §§ 317(c)(5) and 317(c)(7).

---

[2] These letters were submitted by the City in response to the Herald's request for "[a]ny electronic or written communication to and from you or your office relating to City computer policy, abuse of city equipment and/or viewing pornography, either on city equipment or by city personnel, since 2004."

[3] The Herald did not file a cross-appeal. We thus do not address its argument that it would be unconstitutional to prohibit disclosure in this case (an argument that, in any event, does not appear to have been raised below), or its assertion that we should consider redaction as an alternative to full disclosure.

The State, as amicus, asserts that we should not reach the arguments concerning § 317(c)(5) because the trial court erroneously assumed that the City did not have to make a threshold showing that the records dealt with the detection and investigation of crime. The State also asserts that allowing the Herald to review certain withheld records in chambers is inconsistent with the PRA and is otherwise contrary to public policy. Finally, AFSCME argues that the trial court erred in balancing the privacy interests of the employees involved in the 2004 and 2007 incidents against the public's interest in viewing the records at issue.

¶ 19. We review a grant of summary judgment de novo, using the same standard as the trial court. *Shlansky v. City of Burlington*, 2010 VT 90, ¶ 6, 188 Vt. 470, 13 A.3d 1075. Summary judgment is appropriate if there are no issues of material fact and a party is entitled to judgment as a matter of law. *Id.*; V.R.C.P. 56(c)(3).

¶ 20. We begin with items (1)-(8). With respect to the applicability of § 317(c)(5), we agree with the State that as a threshold matter the City must prove and the trial court must find that the records "deal[] with the detection and investigation of *crime*." *Id.* (emphasis added). Because this critical finding is absent, we reverse and remand for further proceedings.[4]

¶ 21. As set forth above, § 317(c)(5) exempts from disclosure:

> records dealing with the detection and investigation of crime, including those maintained on any individual or compiled in the course of a criminal or disciplinary investigation by any police or professional licensing agency; provided, however, records relating to management and direction of a law enforcement agency and records reflecting the initial arrest of a person and the charge shall be public.

In construing § 317(c)(5), our primary goal is "to discern and give effect to the intent of the Legislature." *State v. O'Neill*, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996). We look first to plain meaning of statutory language, and if the plain meaning resolves the

[4] Because no final determination has yet been made whether these items are exempt under § 317(c)(5), it would be premature to address whether they are disclosable under § 317(c)(7). We thus do not address either the City's or AFSCME's arguments concerning the applicability of § 317(c)(7) to items (1)-(8).

interpretation issue, we generally look no further. *Sawyer v. Spaulding*, 2008 VT 63, ¶ 7, 184 Vt. 545, 955 A.2d 532 (mem.).

■ ¶ 22. The language of § 317(c)(5) plainly requires that records "deal[.] with the detection and investigation of crime" to fall within this exemption. Only when this requirement is satisfied can such records "includ[e] those maintained on any individual or compiled in the course of a criminal or disciplinary investigation by any police or professional licensing agency." *Id.* The City did not aver that these documents dealt with the detection and investigation of crime here.

■ ¶ 23. The statute recognizes that the police department, like any other public agency, might investigate and discipline its employees for workplace infractions that do not necessarily constitute criminal conduct. Other types of disciplinary investigations might be tied in with a criminal investigation. The Legislature intended to exclude records involving the latter type, presumably to protect the integrity of the law enforcement and prosecutorial function. See *Caledonian-Record Publ'g Co. v. Walton*, 154 Vt. 15, 23, 573 A.2d 296, 300-01 (1990) (drawing distinction between arrest records and records "dealing with the detection and investigation of crime," and noting that policy reasons for protecting the latter include need to protect State's position in criminal prosecutions by shielding material that may be used to disadvantage of prosecution, such as speculation about a suspect's guilt or an officer's view as to credibility of witnesses, or information that might reveal the names of informants and threaten to intimidate potential witnesses); see also *Bougas v. Chief of Police of Lexington*, 354 N.E.2d 872, 876 (Mass. 1976) (noting that one purpose underlying investigatory materials exemption is "avoidance of premature disclosure of the Commonwealth's case prior to trial, the prevention of the disclosure of confidential investigative techniques, procedures, or sources of information, the encouragement of individual citizens to come forward and speak freely with police concerning matters under investigation, and the creation of initiative that police officers might be completely candid in recording their observations, hypotheses and interim conclusions"); 5 U.S.C. § 552(b)(7)(A)-(F) (identifying similar concerns in determining whether to disclose "records or information compiled for law enforcement purposes" under federal Freedom of Information Act).

¶ 24. Looking at the statutory scheme as a whole, it is apparent that the Legislature intended purely disciplinary investigations — those that do not deal with the detection and investigation of crime — to be evaluated under the "personal documents" exemption in § 317(c)(7), except to the extent such investigations may relate to the "management and direction of a law enforcement agency" and not to a specified individual employee under § 317(c)(5). See *Ran-Mar, Inc. v. Town of Berlin*, 2006 VT 117, ¶ 5, 181 Vt. 26, 912 A.2d 984 ("We construe all parts of the statutory scheme together, where possible, as a harmonious whole."); see also *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 50, 527 A.2d 227, 228 (1986) (explaining that legislative intent "is most truly derived from a consideration of not only the particular statutory language, but from the entire enactment, its reason, purpose and consequences"). As to named individual employees, § 317(c)(7) specifically encompasses "information in any files maintained to . . . discipline any employee of a public agency."

¶ 25. This assumes, of course, that such disciplinary investigations do not involve "records of the office of internal investigation of the department of public safety," which are specifically exempt from public view under § 317(c)(18). See 20 V.S.A. § 1923(d) (stating that records of office of internal investigation shall be confidential, with exceptions not relevant here); 1 V.S.A. § 317(c)(1) (exempting from disclosure records which are by law designated confidential).[5] The Legislature has not enacted a similar exemption for records of internal noncriminal disciplinary investigations conducted by city or town police departments.

¶ 26. Federal courts similarly make a critical distinction between an investigation of a particular employee for a particular violation of law and the "customary surveillance of the performance of duties by government employees" in deciding whether a record is exempt under the federal Freedom of Information Act (FOIA).

---

[5] The Legislature has adopted a process "to ensure that allegations of misconduct by *state police officers* are investigated fully and fairly, and to ensure that appropriate action is taken with respect to such allegations." 20 V.S.A. § 1923(a) (emphasis added). To this end, the office of internal affairs is charged with investigating "all allegations of misconduct by members of the department [of public safety]," and the head of the internal affairs unit must report all allegations and findings to the commissioner as well as to the state's attorney of the county in which the incident took place, the attorney general, and the governor, unless the head of the unit determines that the allegations do not include violation of a criminal statute. *Id.* § 1923(b).

*Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 177 (D.C. Cir. 2002). Exemption 7 of FOIA excludes from disclosure those "records or information compiled for law enforcement purposes," but only to the extent that the production of such records would cause one of six enumerated harms. 5 U.S.C. § 552(b)(7).[6] Not surprisingly, federal courts have held that to fall within this exemption the government must make a threshold showing that the records are "investigatory records" and that they were "compiled for law enforcement purposes." See, e.g., *Stern v. FBI*, 737 F.2d 84, 88-89 (D.C. Cir. 1984) (stating, as to latter requirement, that government must show that records "were compiled for adjudicative or enforcement purposes," although it "need not show that the investigation led to, or will lead to, adjudicative or enforcement proceedings," and that "type of law

---

[6] The statute specifically exempts:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or (F) could reasonably be expected to endanger the life or physical safety of any individual.

5 U.S.C. § 552(b)(7). "As originally enacted," this exemption "authorized agencies to withhold 'investigatory files compiled for law enforcement purposes except to the extent available by law to a private party.'" *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 261 (D.C. Cir. 1982) (quotation omitted). Congress revised this language in 1974 to cover "investigatory records" rather than "investigatory files" and to require the government to show that disclosure of such records would result in certain specified harms. These changes were specifically intended to reject the broad interpretations of the exemption adopted by the United States Court of Appeals for the D.C. Circuit and thereby "restore the intent of the Congress that had enacted the original FOIA." See *id.* at 262.

enforcement to which Exemption 7 is addressed includes the enforcement of both civil and criminal federal laws").

¶ 27. These courts have identified two categories of investigations that may fall within Exemption 7: those involving "an agency's investigation of non-agency personnel and of activities external to the agency's own operations," and those involving "internal investigations directed at the investigating agency's own activities and employees." *Id.* at 89. As the *Stern* court observed, "[i]nternal agency investigations present special problems in the Exemption 7 context" because courts must "distinguish between those investigations conducted 'for a law enforcement purpose,' and those in which an agency, acting as the employer, simply supervises its own employees." *Id.* The court recognized that "an agency's general internal monitoring of its own employees to insure compliance with the agency's statutory mandate and regulations is not protected from public scrutiny under Exemption 7, although another exemption, such as Exemption 6[, which protects certain "personnel files"], may apply." *Id.*

¶ 28. To distinguish between internal investigations conducted for law enforcement purposes and general agency internal monitoring that might reveal evidence that later could give rise to a law enforcement investigation, the *Stern* court applied the following test: "an agency's investigation of its own employees is for 'law enforcement purposes' only if it focuses 'directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions.' " *Id.* (quotation omitted).

¶ 29. In *Stern*, the court considered whether the FBI was required to disclose the names of three FBI employees who were investigated in connection with a possible cover-up of illegal FBI surveillance activities. No criminal charges were brought against the employees, but they were censured in writing by the FBI for negligent job performance. The trial court found that the FBI was required to release the employees' names pursuant to a FOIA request. The appeals court reversed, applying the test above. It found, first, that there was no dispute that the letters were "investigatory records," because they were "the very outcome and conclusion of what was indisputably an investigation." *Id.* at 88.

¶ 30. As to the second inquiry, the court found that records were "compiled for law enforcement purposes." "By focusing on specific and potentially unlawful activity by particular employees,"

the court explained, "the investigation went beyond general monitoring of agency activities. . . . The activity under investigation constituted potential violations of federal criminal laws prohibiting the obstruction of justice." *Id.* at 89-90. The court emphasized that an investigation conducted by a federal agency for the purpose of determining whether to discipline employees for activity which *does not* constitute a violation of law is not for "law enforcement purposes" under Exemption 7. It found this fact assumed in the test cited above, which requires that the acts investigated must be ones "which could, if proved, result in civil or criminal sanctions." *Id.* at 89 (quotation omitted). It was also assumed in all of the FOIA cases respecting requests for the disciplinary records of federal employees which were analyzed under Exemption 6, rather than Exemption 7. *Id.*

¶ 31. The court reiterated this holding in *Jefferson*, explaining that "if the investigation is for a possible violation of law, then the inquiry is for law enforcement purposes, as distinct from customary surveillance of the performance of duties by government employees." 284 F.3d at 177. This distinction appears to be equally useful in determining whether a record "deal[s] with the detection and investigation of crime" for purposes of § 317(c)(5).

■■ ¶ 32. We decline to consider in the first instance, however, whether this threshold requirement is satisfied as to items (1)-(8). As the State points out, the burden is on the City to justify its nondisclosure decision and the City provided no affidavit stating that the records at issue "deal[] with the detection and investigation of crime." See, e.g., *Trombley*, 160 Vt. at 107, 624 A.2d at 861 (burden is on agency to "make the specific factual record necessary to support the exception claim" (quotation omitted)). Should the court find the exemption applicable to some or all of these records on remand, we note that we have rejected the argument that § 317(c)(5) contains a temporal limit. *Rutland Herald v. Vt. State Police*, 2012 VT 24, 191 Vt. 357, 49 A.3d 91 [hereinafter *Rutland Herald I*].

■ ¶ 33. We next consider the trial court's application of the "management and direction" proviso in § 317(c)(5). We recently concluded that classifying "actual investigation files" as falling within the management proviso would obviate the language specifically addressing and exempting such records from disclosure and it would swallow the exemption. *Id.* In *Rutland Herald I*,

there was no dispute over the nature of the records in question. They were directly related to a specific criminal investigation, and "they were not related to policy, employment practices, or other activities that would fall within a common sense understanding of the term 'management and direction of a law enforcement agency.'" *Id.* ¶ 29.

¶ 34. This case presents a closer question. As an initial matter, it is not yet clear which of the records here are actual investigation records. Consistent with our holding in *Rutland Herald I*, any such records are exempt and not disclosable under the proviso. Other records, however, may promote the Legislature's desire for accountability to the public through knowledge of how and how well the police department manages its employees. Disclosure of management records will expose whether that agency is responsive to specific instances of misconduct, whether the agency is accountable to itself internally, whether it challenges its own assumptions regularly in a way designed to expose systemic infirmity in management oversight and control; the absence of which may result in patterns of inappropriate workplace conduct, for example.

██ ¶ 35. The Legislature has made clear that the PRA must be "liberally construed with the view towards carrying out" its legislative purpose of allowing "free and open examination of records consistent with Chapter I, Article 6 of the Vermont Constitution." 1 V.S.A. § 315; see also Vt. Const., ch. I, art. 6 (recognizing that government officials are legally accountable to the people). "Officers of government are trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions even though such examination may cause inconvenience or embarrassment." 1 V.S.A. § 315. The public interest in knowing what the government is doing "is particularly acute in the area of law enforcement." *Walton*, 154 Vt. at 21, 573 A.2d at 299. This includes the public's interest "in learning about the operations of a public agency . . . and in having information openly available to them so that they can be confident in the operation of their government." *City of Baton Rouge/Parish of East Baton Rouge*, 4 So. 3d at 821. The public also has "an interest in knowing whether public servants are carrying out their duties in an efficient and law-abiding manner." *Globe Newspaper Co. v. Police Comm'r of Boston*, 648 N.E.2d 419, 425 (Mass. 1995) (quotation omitted).

¶ 36. We note that the Rhode Island Supreme Court, interpreting a similar "management and direction" proviso, has concluded that certain records pertaining to civilian complaints about police misconduct, specifically, reports of disciplinary actions taken in response to citizen complaints, were disclosable. *Direct Action for Rights & Equality v. Gannon*, 713 A.2d 218, 224-25 (R.I. 1998).[7] The court reasoned that the manner in which a law enforcement agency addresses the concerns of its citizens regarding such complaints "relates to the management and direction of a law enforcement agency." *Id.* at 224. It thus ordered the release of these documents with certain redactions. This reasoning may be equally applicable to documents that illustrate the police department's oversight and management of its own employees.

¶ 37. While it would be premature to decide how to apply the proviso here, we do not foreclose the possibility that it may include records demonstrating how the police department re-

---

[7] Rhode Island law specifically excludes from disclosure:

> All records maintained by law enforcement agencies for criminal law enforcement; and all records relating to the detection and investigation of crime, including those maintained on any individual or compiled in the course of a criminal investigation by any law enforcement agency . . . provided, however, records relating to management and direction of a law enforcement agency and records reflecting the initial arrest of an adult and the charge or charges brought against an adult shall be public.

*Id.* at 224 (quotation and emphasis omitted).

We note that Rhode Island, like numerous other states, includes a list of specific criteria to limit the scope of its law-enforcement exemption. See R.I. Gen. Laws § 38-2-2(5)(i)(D)(a)-(f) (providing that such law-enforcement records are exempt only to extent that their disclosure "could reasonably be expected to interfere with investigations of criminal activity or with enforcement proceedings"; "would deprive a person of a right to a fair trial or an impartial adjudication"; "could reasonably be expected to constitute an unwarranted invasion of personal privacy"; "could reasonably be expected to disclose the identity of a confidential source . . . or the information furnished by a confidential source"; "would disclose techniques and procedures for law enforcement investigations or prosecutions" or "could reasonably be expected to endanger the life or physical safety of any individual"); see also *supra*, ¶ 23 (citing case law from other states, as well as FOIA, which have identified similar policy goals underlying their law-enforcement record exemptions). This approach appears to promote open access to public records while also serving the policy goals that a law-enforcement-records exemption is designed to protect. It would be useful for our Legislature to consider a similar approach as it contemplates revisions to the PRA.

sponds to workplace infractions, including its response to a possible pattern of inappropriate workplace behavior. We note that redaction could be appropriate as well, as in *Gannon*.

¶ 38. We turn next to the disciplinary letters involving two DPW employees (items (9) and (10)). The trial court's decision regarding these documents was based solely on its application of the "personal records exemption," 1 V.S.A. § 317(c)(7). AFSCME maintains that the court did not properly balance the privacy interests and the public interest in reaching its conclusion.[8] According to AFSCME, employees who view legal pornography at work have a privacy interest that protects the disclosure of their names and disciplinary records, and the Herald's desire to know how an agency is supervising its employees does not create a public interest sufficient to override individual privacy rights. AFSCME concedes that viewing pornography at work is inappropriate, but argues that it concerns personal noncriminal conduct that is not directly related to carrying out one's professional duty.

¶ 39. As set forth above, § 317(c)(7) exempts:

> personal documents relating to an individual, including information in any files maintained to hire, evaluate, promote or discipline any employee of a public agency, information in any files relating to personal finances, medical or psychological facts concerning any individual or corporation; provided, however, that all information in personnel files of an individual employee of any public agency shall be made available to that individual employee or his or her designated representative.

We have construed the term "personal documents" to apply only when the privacy of the individual is involved. *Trombley*, 160 Vt. at 109, 624 A.2d at 863. Thus, "the exception applies only to those documents that reveal intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends." *Kade*, 2006 VT 44, ¶ 8 (quotation omitted).

¶ 40. As previously noted, the court must balance the interests in privacy and disclosure in deciding if a document is

---

[8] The City does not challenge the disclosure of these two items under § 317(c)(7) on appeal.

exempt under this provision. In doing so, it "must consider not only the relevance, if any, of the records to the public interest for which they are sought, but any other factors that may affect the balance, including: the significance of the public interest asserted; the nature, gravity, and potential consequences of the invasion of privacy occasioned by the disclosure; and the availability of alternative sources for the requested information." *Id.* ¶ 14.

¶ 41. The trial court considered these factors and concluded that the public interest in disclosure outweighed any privacy interest. See *Norman v. Vt. Office of Ct. Adm'r*, 2004 VT 13, ¶ 9, 176 Vt. 593, 844 A.2d 769 (mem.) (stating that issue of "[w]hether public records relating to disciplinary action, performance evaluations, or employee grievances contain 'personal' information within this exception is a fact-specific determination"); see also *Kanaan v. Kanaan*, 163 Vt. 402, 405, 659 A.2d 128, 131 (1995) (it is exclusive role of trial court to weigh evidence). We need not delve into the scope of an employee's expectation of privacy, if any, in using a public computer to view pornography at work. While the public interest in the release of these letters does not appear particularly weighty, "it *is* in the public interest to enable any person to review and criticize" decisions of government officers. 1 V.S.A. § 315 (emphasis added). At the same time, as to the DPW employees, the court addressed any undue invasion of privacy by redacting the employees' names and suspension dates. See *Walton*, 154 Vt. at 20, 573 A.2d at 299 (explaining that exemptions to PRA are strictly construed "against the custodians of the records and any doubts should be resolved in favor of disclosure"). AFSCME fails to show that the court abused its discretion in concluding that the balance of interests favored disclosure of these redacted documents. See *Quenneville v. Buttolph*, 2003 VT 82, ¶ 11, 175 Vt. 444, 833 A.2d 1263 ("A trial court's discretionary rulings are examined under an abuse of discretion standard of review, which requires a showing that the trial court has withheld its discretion entirely or that it was exercised for clearly untenable reasons or to a clearly untenable extent." (quotation omitted)).

¶ 42. Finally, we reverse the trial court's decision to allow the Herald to review in camera numerous withheld records that depict possible child pornography, notwithstanding the court's conclusion that public release of these images was not proper. The

court identified no legal basis for this ruling, and we find no support for this approach in the PRA.

*We reverse and remand as to items (1)-(8); affirm as to items (9) and (10); and we reverse the court's decision to allow the Herald to view withheld documents in camera.*

¶ 43. **Dooley, J.**, concurring and dissenting. Construing statutes is an art and not a science. We have a number of construction canons that we routinely apply to statutory language to find the meaning as applied to the case in front of us. Nevertheless, we recognize that these canons have to be guides, and not firm rules. See *In re Wal*Mart Stores, Inc.*, 167 Vt. 75, 84, 702 A.2d 397, 403 (1997). While we strive for precision in language, we often fall short of the ideal. So it is with the Legislature.

¶ 44. The critical construction in this case is the challenge of properly understanding the use of the word "including" in 1 V.S.A. § 317(c)(5). This clause exempts from public access "records dealing with the detection and investigation of crime, *including* those . . . compiled in the course of a criminal or disciplinary investigation by any police or professional licensing agency." *Id.* (emphasis added). The majority construes this use of the word "including" as meaning that records within the closing phrase must also fall within the opening phrase. Thus, in the majority's view, records compiled in the course of a disciplinary investigation by a police agency are exempt from public access under § 317(c)(5) only if they are also records dealing with the detection and investigation of crime. With virtually no analysis, and certainly no consideration of alternatives, the majority states that the language "plainly requires" this result. *Ante*, ¶ 22.

¶ 45. In this case, plain meaning is in the eye of the beholder. The meaning that the majority finds is plain is only one of at least two likely possibilities. As the U.S. Supreme Court has noted: "Undoubtedly the word 'including' may preface an illustrative example of a general power already granted, or it may serve to define that power or even enlarge it. Whether it is the one or another must be determined by the purpose of the Act, to be ascertained in the light of the context, the legislative history, and the subject matter to which the statute is to be applied." *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 211 (1941) (citations omitted); see also *Montello Salt Co. v. Utah*, 221 U.S. 452, 464-65 (1911) ("It may have the sense of addition, as we have seen, and of 'also';

but, we have also seen, 'may merely specify particularly that which belongs to the genus.'" (quoting *Hiller v. United States*, 106 F. 73, 74 (2d Cir. 1901)). The U.S. Court of International Trade has given a complete summary of the variegated uses of "including":

> A statute's use of the term "including" generally may serve: (1) not to provide an all-embracing definition, but to connote simply an illustrative application of the general description without limiting the general description; (2) to add products to the heading that fall outside the general description; (3) to arrest any doubt as to whether the exemplars are included within the class; or (4) to demarcate the boundary between what falls within the general class from that which falls without thereby limiting the scope of the general class.

*Cummins Inc. v. United States*, 377 F. Supp. 2d 1365, 1372-73 (Ct. Int'l Trade 2005) (quotations, alterations and footnotes omitted).

¶ 46. On at least two occasions, this Court has read "including" as appending something additional. In *In re Central Vermont Public Service Corp.*, 135 Vt. 432, 433, 378 A.2d 510, 511 (1977), this Court interpreted an "including" clause to expand the scope of the phrase being modified beyond its most natural meaning. The case required interpretation of the following requirement: "Notice of the town meeting shall be posted in at least five public places, including the library and a newspaper of general circulation in the town . . . ." The town had not published notice in the newspaper, but had posted notice at the office of the newspaper. The Court held this to be inadequate, thereby reading the "including" clause to expand the meaning of "public places" to cover more than physical locations. In *Lockwood v. Cobb*, a statute prescribed a fee of thirty-four cents "for taking a deposition, including caption and certificate." 5 Vt. 422, 424 (1833) (quotation omitted). This Court concluded that, although caption and certificate were separate from the administration of the oath, "taking deposition" should not be read to cover writing out the deposition. That is, the "including" clause was read to expand beyond "taking deposition" and not to imply that "taking deposition" must include writing out the deposition, of which the caption and certificate would be a part.

¶ 47. As the U.S. Supreme Court has indicated, we must determine the meaning of the term "including" in the context in

which it is used to determine the intent of the Legislature. *Phelps Dodge Corp.*, 313 U.S. at 211. Here, three aspects of the context point strongly to a legislative intent to exempt records of a police disciplinary investigation whether or not those records include detection and investigation of crime.

¶ 48. The first, and most obvious, is that it makes the disciplinary investigation language superfluous. See *State v. Tierney*, 138 Vt. 163, 165, 412 A.2d 298, 299 (1980) (reading statute to avoid construction that would render specific enumeration superfluous); see also *State Office of Inspector Gen. v. Superior Court*, 117 Cal. Rptr. 3d 388, 397 (Ct. App. 2010) (avoiding construction that would void language in statute). That is, no application of the statute would turn out differently if the disciplinary investigation language were omitted. There may be reasons to include irrelevant language, as courts have noted above, but there is no indication that any of those reasons apply here. For example, I see no reason to emphasize that a criminal investigation of a police officer is subject to the same public access rule as a criminal investigation of someone else or that disciplinary investigations of police, and licensed professionals, could include investigation of a possible crime. Nor does the disciplinary investigation language help to define the "detection and investigation of crime" language. Under the majority's construction, the disciplinary investigation language serves no purpose and has no effect.

¶ 49. The second aspect is that the phrase after the word "including" covers disciplinary investigations by a professional licensing agency. A professional licensing agency has no criminal law enforcement authority and, therefore, would be required to turn an investigation into criminal activity over to the police. Its inclusion in the phrase strongly suggests that the Legislature intended the word "including" as denoting additional records not dealing with the detection and investigation of crime.

¶ 50. The third aspect of the context is for me the most telling. Prior to 2011, the last phrase of § 317(c)(5) read: "records reflecting the initial arrest of a person and the charge shall be public." In 2011, the Legislature amended this phrase to read: "records reflecting the initial arrest of a person, *including any ticket, citation, or complaint issued for a traffic violation, as that term is defined in 23 V.S.A. § 2302*; and records reflecting the charge of a person shall be public." 2011, No. 59, § 3 (emphasis added). Issuing tickets, citations or complaints for a traffic viola-

tion does not alone involve an arrest. This is a clear example of the Legislature using "including" to mean in addition, and it occurs in the same subsection as the one we are construing in this case. I think it highly unlikely that the Legislature would use "including" in one way in one part of § 317(c)(5) and in a wholly different way in another part.

¶ 51. Apart from its reading of the statute's "plain" language, the majority's analysis rests on cases from other jurisdictions, which conclude that there is a distinction between professional or disciplinary investigations leading to criminal charges and other noncriminal disciplinary investigations. The reasoning of these cases provides limited assistance to us, however, given the distinct language of our PRA. For example, the majority relies on *Stern v. Federal Bureau of Investigation*, 737 F.2d 84 (D.C. Cir. 1984), which drew a distinction between investigations focused on potentially unlawful activity and those where "an agency, acting as the employer, simply supervises its own employees." *Id.* at 89. This case was dependent, however, on the language of the Freedom of Information Act (FOIA) exempting "investigatory records compiled for law enforcement purposes." The court's conclusion stemmed directly from the statutory language. Given the difference between that language and § 317(c)(5), it is difficult to derive useful principles from those federal cases. See *Rutland Herald v. Vt. State Police*, 2012 VT 24, ¶ 19, 191 Vt. 357, 49 A.3d 91 (noting minimal utility of judicial decisions interpreting other public records statutes because language of the particular statutes "varies widely") [hereinafter *Rutland Herald I*].

¶ 52. Therefore, I disagree that it is necessary in this case to remand the matter to the trial court for a factual determination of whether the investigatory records deal with the "detection and investigation of crime." The trial court found that the records were "maintained on any individual or compiled in the course of a criminal or disciplinary investigation" by police. This finding is sufficient to demonstrate that the records fall within the exemption, and no further factual analysis is necessary. Moreover, because § 317(c)(5) "provides a categorical exemption" without a balancing of interests, *Rutland Herald I*, 2012 VT 24, ¶ 24, I

would hold that items one through eight are exempt from disclosure.[9]

¶ 53. A few additional notes are necessary. I agree with the majority that neither of the trial court's grounds for disclosure supports release of the records. First, as the majority holds, § 317(c)(5) does not contain a time limitation. This question was resolved in *Rutland Herald I*, 2012 VT 24, ¶¶ 12-13, wherein we held that the exemption applies even after an investigation is complete. Second, the records here do not fall under the management-and-direction proviso. *Rutland Herald I* instructs that that exception was not intended to disclose records about a specific investigation; rather it applies to records "related to policy, employment practices, or other activities that would fall within a common sense understanding of [management]." *Id.* ¶ 29. The records at issue here deal with investigating the behavior of particular individuals and not the overall management of the police department.

¶ 54. Even if the records are not exempt under § 317(c)(5), the City and the union claim that § 317(c)(7) applies. This exemption applies to "personal documents relating to an individual, including information in any files maintained to hire, evaluate, promote or discipline any employee of a public agency." 1 V.S.A. § 317(c)(7). The superior court analyzed the records under this exemption and concluded that the exemption did not prevent their disclosure. Under my construction of the statute, it is not necessary to reach this question because the records are already exempt under § 317(c)(5). The majority claims that because there is no final determination regarding § 317(c)(5), it is "premature" to reach the question of whether the records are exempt as personal documents under § 317(c)(7). *Ante*, ¶ 20 n.4.

¶ 55. Even if I joined the majority's construction of § 317(c)(5), I would dissent from the failure to determine whether any of the records are exempt under § 317(c)(7). The trial court ruled on this

---

[9] There are ten groups of records at issue in this case. As explained by the majority, the first eight involve investigations of police department employees. Items nine and ten involve employees of the Department of Public Works (DPW), which were withheld solely under § 317(c)(7). Applying the balancing test inherent in § 317(c)(7), the court held that the documents should be released, but redacted any identifying information. On appeal, the union representing the DPW employees argues that these records should be exempt. I concur with the majority's affirmance of the trial court's order regarding items nine and ten.

issue, and the City appealed the ruling. Both sides have briefed the application of § 317(c)(7). Given the time-sensitive nature of public records requests, our obligation is to resolve the issues as expeditiously and efficiently as possible. I see no reason why we are failing to resolve the issue before us.

¶ 56. Unfortunately, in this case, it has now been more than two years since the Rutland Herald requested these records from the City of Rutland and its police department. The time consumption should be expected because the issues are complex and important, but we should always be cognizant that the Legislature has directed that both public records trials and appeals "take precedence on the docket over all cases," except those considered to be of greater importance, and should be "expedited in every way." 1 V.S.A. § 319(b). Depending upon how we rule on the § 317(c)(7) issue, this issue could end this controversy. In my opinion, the remand without resolving the application of § 317(c)(7) to the records is very likely to produce another appeal. I do not believe we honor the policy directive of the Legislature by addressing the issues piecemeal. To prevent even further delay, I believe we must today address all issues that will arise on remand or to prevent a remand. I dissent from the failure of the majority to do that.

¶ 57. In sum, I would read "including" in § 317(c)(5) as meaning "in addition to" and apply the exemption to all records maintained or created in the course of a criminal or disciplinary investigation conducted by a police or professional licensing agency. Because the records at issue fall within this category, they are exempt from disclosure. I further dissent from the failure to address whether the records in issue are exempt from public access under 1 V.S.A. § 317(c)(7).

¶ 58. I am authorized to state that Justice Johnson joins this dissent.