2013 VT 98

### Rutland Herald v. City of Rutland and AFSCME Council 93, Local No. 1201

[84 A.3d 821]

No. 12-368

Present: Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and Zonay, Supr. J., Specially Assigned

Opinion Filed October 11, 2013

*Robert B. Hemley* and *Matthew B. Byrne* of *Gravel & Shea, PC*, Burlington, for Plaintiff-Appellee.

*Andrew Costello*, Office of City Attorney, Rutland, for Defendant-Appellant.

¶ 1. **Burgess, J.** The City of Rutland appeals from the trial court's order, on remand, directing it to disclose certain records under the Vermont Public Records Act (PRA), 1 V.S.A. §§ 315-320. The records concern several Rutland Police Department (RPD) employees who were investigated and disciplined for viewing and sending pornography on work computers while on duty. The City argues that the trial court erred in evaluating the privacy interests at stake and concluding that the "personal records" exemption, 1 V.S.A. § 317(c)(7), did not apply. We affirm.

¶ 2. As recounted in our initial opinion, *Rutland Herald v. City of Rutland*, 2012 VT 26, 191 Vt. 387, 48 A.3d 568, the Rutland Herald learned via a 2009 search warrant that Rutland Police Department computers had been used to view and store pornography. As part of its investigation, the Herald requested records from the City, including: the complete record of a 2004 internal investigation into RPD Employee #1's alleged viewing of pornography at work, as well as letters from the police chief relating the employee's status pending completion of the investigation and then imposing discipline following the investigation; similar materials from a 2010 investigation involving RPD Employee #2; materials related to a 2010 investigation of RPD Employee #3 for viewing pornography at work; and materials concerning the imposition of discipline in 2007 against two employees of the Department of Public Works (DPW) for violating the City's internet usage policy.

¶ 3. The trial court reviewed these records in camera and, in a September 2010 decision, ordered their release with certain redactions. The trial court rejected the City's contention that the documents were exempt from disclosure under 1 V.S.A. § 317(c)(5), which applies to "records dealing with the detection and investigation of crime," or under 1 V.S.A. § 317(c)(7), which excludes "personal documents relating to an individual." On appeal, we affirmed the trial court's decision as to the records concerning the DPW employees. We reversed and remanded as to the remaining records, concluding that the trial court needed to assess, as a threshold matter, if the records dealt with "the detection and investigation of crime" under § 317(c)(5). Because no final deter-

mination had yet been made as to the applicability of this exemption, we found it premature to address whether these documents would fall within 1 V.S.A. § 317(c)(7).

¶ 4. Following an evidentiary hearing on remand, the court concluded in September 2012 that certain documents were exempt from disclosure under 1 V.S.A. § 317(c)(5), while other documents, including the records at issue here, were not. The court's 2012 decision left in place its earlier September 2010 ruling that these records were not exempt under 1 V.S.A. § 317(c)(7).

¶ 5. ■ Section 317(c)(7) exempts from public disclosure "personal documents relating to an individual, including information in any files maintained to hire, evaluate, promote, or discipline any employee of a public agency, information in any files relating to personal finances, medical or psychological facts concerning any individual or corporation." We have construed the term "personal documents" to apply "only when the privacy of the individual is involved." *Rutland Herald*, 2012 VT 26, ¶ 39. More specifically, "the exception applies only to those documents that reveal intimate details of a person's life, including any information that might subject the person to embarrassment, harassment, disgrace, or loss of employment or friends." *Kade v. Smith*, 2006 VT 44, ¶ 8, 180 Vt. 554, 904 A.2d 1080 (mem.) (quotation omitted).

¶ 6. ■ In applying § 317(c)(7), the trial court must "balance the public interest in disclosure against the harm to the individual." *Rutland Herald*, 2012 VT 26, ¶ 11. In doing so, it

> must consider not only the relevance, if any, of the records to the public interest for which they are sought, but any other factors that may affect the balance, including: the significance of the public interest asserted; the nature, gravity, and potential consequences of the invasion of privacy occasioned by the disclosure; and the availability of alternative sources for the requested information.

*Kade*, 2006 VT 44, ¶ 14.

¶ 7. The trial court applied these standards in reaching its conclusion as to § 317(c)(7). It found the records highly relevant to the public's interest in determining if the police department followed its own internal investigation procedure, and if it properly decided whether to conduct criminal investigations of its own employees. The court found that the public had a significant

interest " 'in learning about the operations of a public agency, the work-related conduct of public employees, in gaining information to evaluate the expenditure of public funds, and in having information openly available to them so that they can be confident in the operation of their government.' " (Quoting *City of Baton Rouge/Parish of E. Baton Rouge v. Capital City Press, L.L.C.*, 4 So. 3d 807, 821 (La. Ct. App. 2008) (citations omitted).) It emphasized that the public should be allowed to scrutinize " 'both the activity of public employees suspected of wrongdoing and the conduct of those public employees who investigate the suspects.' " (Quoting *id.*)

¶ 8. ■ The court found the privacy interests at stake much less compelling. It rejected the City's assertion that the records should be exempt because they would reveal "information that might subject the [employees] to embarrassment, harassment, disgrace, or loss of employment or friends." (Quoting *Kade*, 2006 VT 44, ¶ 8.) The court explained that the "personal documents" exception under § 317(c)(7) must be narrowly construed "to apply only when the privacy of the individual is involved," and it applied only to those "intimate details of a person's life." (Quoting *Kade*, 2006 VT 44, ¶ 8.) The court found that the employees here had little expectation that their actions or identities would remain private when they viewed and sent pornography on public computers while on duty as public employees. These were not intimate details of a person's life. The court therefore found little, if any, privacy interest involved.

¶ 9. In assessing the interests at stake, the court did not find redaction of the employees' identities or suspension dates warranted. It stated that the public had a significant interest in learning the suspension dates to review if the police department actually suspended the employees, how long the investigations took, and how soon the employees were suspended after the findings of misconduct. The court found this information vital to the public's ability to scrutinize both the employees' behavior and the management's response to that behavior. Additionally, the court found that redacting the employees' names would cast suspicion over the whole department and minimize the hard work and dedication shown by the vast majority of the police department.[*]

---

[*] As stated, in its initial decision, the court did not order redaction of the employees' identities and suspension dates, but indicated that it would redact any

¶ 10. Finally, the court found no alternative sources for the information. Thus, in balancing the interests in privacy and disclosure under the considerations identified in *Kade,* the court concluded that the interest in disclosure heavily outweighed any privacy interests that the employees had in their actions and identities.

¶ 11. Challenging this decision on appeal, the City reiterates that the records should be exempt under § 317(c)(7) because their disclosure would subject the employees to embarrassment, harassment and disgrace, and possibly to lost friendships. The City also argues that the court erred in finding that its employees had no privacy interest in viewing pornography at work. It maintains that the employees must have some expectation of privacy while performing "work related functions," whether allegedly improper or not, because otherwise, there would be no need for a balancing test. If this Court does order the release of these documents, the City argues that redaction of any names or identifying information is appropriate.

¶ 12. At the outset, we emphasize that "the policy underlying the PRA clearly favors the right of access." *Kade,* 2006 VT 44, ¶ 7. As the Legislature has expressly stated:

> It is the policy of [the Public Records Act] to provide for free and open examination of records consistent with Chapter I, Article 6 of the Vermont Constitution. Officers of government are trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions even though such examination may cause inconvenience or embarrassment. All people, however, have a right to privacy in their personal and economic pursuits, which ought to be protected unless specific information is needed to review the action of a governmental officer.

---

information regarding uninvolved citizens, confidential complaining witnesses, and family members of the employees. The court also proposed to redact all personal information such as any medical information, home addresses, telephone numbers, social security numbers, drivers' license numbers, employee identification numbers, dates of birth, and email addresses.

In its order on remand, the court indicated that the records related to Employee #1 were also subject to additional redactions, if necessary, of all personally identifying information as well as redactions of the dates of suspension.

1 V.S.A. § 315. Mindful of these principles, we construe PRA exemptions strictly against the records custodian, and we resolve any doubts in favor of disclosure. *Kade*, 2006 VT 44, ¶ 7.

¶ 13. ■ We review the trial court's balancing of the relevant interests under § 317(c)(7) for abuse of discretion. *Rutland Herald*, 2012 VT 26, ¶ 41. We find no abuse of discretion here. In reaching our conclusion, we need not decide precisely what privacy interest, if any, employees have in viewing and emailing pornography at work. Assuming that the employees have some privacy interest at stake, we agree with the trial court that it is heavily outweighed by the public interest in disclosure.

¶ 14. As the trial court found, there is a significant public interest in knowing how the police department supervises its employees and responds to allegations of misconduct. This is particularly true given the repeated instances of similar misconduct within the police department over a five-year period, as well as the apparent scope of the misconduct. Internal investigation records reveal that one employee downloaded between 5,000 to 10,000 pornographic images onto his work computer, including possible child pornography, and an investigator estimated that it would take one week of constant viewing to review all of these images.

¶ 15. We alluded to the important public interests at stake in our prior opinion, albeit in the context of a different exemption. See *id.* ¶ 34 (recognizing that disclosure of certain police department records "may promote the Legislature's desire for accountability to the public through knowledge of how and how well the police department manages its employees"). As we suggested there, the internal investigation records and related material will allow the public to gauge the police department's responsiveness to specific instances of misconduct; assess "whether the agency is accountable to itself internally, whether it challenges its own assumptions regularly in a way designed to expose systemic infirmity in management oversight and control; the absence of which may result in patterns of inappropriate workplace conduct." *Id.*

¶ 16. The privacy interests at stake are far less weighty. Certainly, one cannot reasonably expect a high level of privacy in viewing and sending pornography on work computers while on duty at a public law enforcement agency. To the extent that such

activities are considered a "personal pursuit," the purported claim to privacy in exclusively personal pursuits enjoyed at public expense on public time is one of those situations where, as recognized by the Legislature, the employee's right to privacy must properly give way to the public's need for the information "to review the action of a governmental officer." 1 V.S.A. § 315. This is not a personnel matter where the officers' execution of duty is called into question or subject to disciplinary correction; it is instead a matter of a personal frolic entirely unrelated to the officers' jobs except for the coincidence that it occurred on public time with public property.

¶ 17. Under these circumstances, we find no basis to order the trial court to redact personally identifying information concerning the two employees. The trial court identified compelling reasons for its initial decision not to redact this information and its conclusion was within its discretion. See, e.g., *Ball v. Melsur Corp.*, 161 Vt. 35, 40, 633 A.2d 705, 710 (1993) (holding that this Court will disturb trial court's discretionary rulings "only if there has been an abuse of discretion, that is, if the record reveals no reasonable basis for the decision"). As stated above, the court found information about the investigations, including the penalties imposed, to be vital to the public's ability to scrutinize both the employees' behavior and the management's response to that behavior. Additionally, it found that redacting the employees' names would cast suspicion over the whole department and minimize the hard work and dedication shown by the vast majority of the police department. Given the minimal privacy interests at stake, and the weighty public interest in disclosure, we agree with the trial court that the balancing of relevant interests favors disclosure of these documents without the need for redaction of the employees' personally identifying information.

¶ 18. The City's arguments do not persuade us otherwise. In support of its assertion that the privacy interests at stake outweigh the public interest in disclosure, the City points to out-of-state cases cited in *Norman v. Vermont Office of Court Administrator*, 2004 VT 13, ¶ 9, 176 Vt. 593, 844 A.2d 769 (mem.). It maintains that these out-of-state courts withheld documents containing "much less salacious" information than that at issue here. The cases are not compelling authority, and *Norman* does not require a different result.

¶ 19. In *Norman*, we did not reach the issue of whether documents relating to disciplinary action, grievances, and a crimi-

nal records check contained in an employee's personnel file were exempt under § 317(c)(7). Instead, we reversed and remanded a trial court decision that failed to make findings on the applicability of this exemption. We emphasized that determining whether such records contained "personal information" presented a fact-specific inquiry, and noted that "many courts have held that such records may contain highly personal, embarrassing information exempt from disclosure." *Id.* ¶ 9. The references to out-of-state cases were dicta; our holding indicated that each case must be decided on its own facts. It is not clear what public interest was sought to be served by disclosure of the employee's records in *Norman*. There is a significant public interest at stake in the instant case, however, one that outweighs any potential invasion of privacy. Our holding here is consistent with *Norman*.

¶ 20. The City also cites *Kade*, 2006 VT 44, arguing that both cases involve similarly embarrassing records, disclosure of which might undermine the employees' ability to perform their jobs. In *Kade*, the plaintiff sought to compel disclosure of four performance evaluations of the superintendent of a correctional facility. The plaintiff sought the records to discern whether the superintendent was negligent or had otherwise engaged in improprieties that might have contributed to the deaths of seven Vermont inmates. An investigative report suggested that this was the case. The trial court found that the evaluations, which by their nature dealt with general performance rather than specific incidents, would not significantly advance the public interest. It thus found that the balance tipped in favor of nondisclosure.

¶ 21. We reversed and remanded, concluding that the court needed to review the documents in camera before it could determine if their disclosure would advance the asserted public interest. In reaching our conclusion, we stated that the performance evaluations contained "precisely the sort of information that we have recognized as falling within the personal-documents exception." *Id.* ¶ 11. At the same time, we found it reasonable to believe that the performance evaluations "might shed light on the quality and extent of the DOC's supervision of [the superintendent], on its expectations of superintendents generally, and on the overall level of accountability within the DOC." *Id.* ¶ 13. We thus directed the trial court on remand to examine the documents and balance the interests in privacy and disclosure.

¶ 22. ▮ *Kade* supports our conclusion here. Even assuming, as we have, that the records in the instant case contain "personal information" that falls within § 317(c)(7), there remains a balancing test to be conducted. We recognized in *Kade* that there may be a broad public interest served by the release of documents that contain "personal information." That is precisely the conclusion we reach here. As set forth above, given the significant public interest at stake, the balance here tips in favor of disclosure.

*Affirmed.*